UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN
_____

UNITED STATES OF AMERICA,

        Plaintiff,                      Case No. 97-CR-98

    v.

RANDY M. YAGER,

        Defendant.
_____

**UNITED STATES' CONSOLIDATED RESPONSE TO
TO DEFENDANT YAGER'S PRETRIAL MOTIONS**
_____

**BACKGROUND**

On May 30, 1997, a grand jury sitting in the Eastern District of Wisconsin charged defendant Randy M. Yager, and sixteen other co-defendants, with violations of the Racketeer Influenced and Corrupt Organization Act (RICO). Count One charged Yager with substantive racketeering, in violation of Title 18, United States Code, Section 1962(c). Count Two charged Yager with RICO conspiracy, in violation of Title 18, United States Code, Section 1962(d).

On November 10, 1998, the grand jury returned a superseding indictment that charged Yager with the same offenses.

By the end of 2000, the cases against all sixteen of Yager's co-defendants were resolved, either by plea or by trial convictions. Yager, however, remained a fugitive from June 10, 1997, when the original indictment was unsealed and arrest warrants executed, until he was arrested on October 26, 2014 in Baja, Mexico, where he was living under an assumed name. The United

1

States has since returned Yager to Wisconsin and he is now scheduled to stand trial on August 3, 2015.

## INTRODUCTION

Yager has filed several pretrial motions. First, Yager seeks an *in camera* review of the presentence reports (PSR) of four former defendants who are potential witnesses against him and the disclosure of any exculpatory portions of those PSRs. Second, he asks that the court compel the government to produce to his counsel the addresses of its cooperating witnesses and various types of exculpatory evidence, if such evidence exists. Third, he asks for a pretrial hearing on the admissibility of co-conspirator statements. Finally, he seeks an evidentiary hearing and a ruling suppressing certain evidence.

First, Yager's motion for an *in camera* review of the PSRs should be denied without prejudice as premature. Any such review should be conducted by the trial judge who will hear the witnesses' trial testimony. The trial judge will be in the position to determine whether the PSRs in fact contain any information that has such exculpatory or impeaching value that its disclosure is absolutely essential to the effective presentation of a defense.

Second, Yager's motion for pretrial disclosure of the addresses of the government's potential witnesses should also be denied. Neither the Constitution nor the Federal Rules of Criminal Procedure entitle him to such personal information of the government's potential witnesses. Nor does this case present any compelling reason to disclose such information.

Additionally, Yager's motion to compel the government to produce certain items that he deems to be exculpatory should likewise be denied. The government is following its open file policy and Yager has failed to comply with the requirement under Criminal Local Rule 16(b) to confer with the government before bringing this motion.

2

Third, Yager's motion for a pretrial hearing regarding the admissibility of co-conspirator statements should also be denied as premature. Such a non-binding pretrial hearing, outside the context of actual trial testimony, would be inefficient and unnecessary. The better course would be to do what the district court did at the trials of Yager's co-defendants, namely, to conditionally admit the government's proffered co-conspirators' statements at trial subject to the government's eventual introduction of sufficient additional evidence to satisfy the test for admissibility of co-conspirator statements under Federal Rule of Evidence 801(d)(2)(E).

Finally, this court should deny Yager's motion for an evidentiary hearing and for the suppression of evidence. As set forth in the government's April 29, 2015 response, Yager has failed to allege disputed facts sufficient to justify an evidentiary hearing, and the facts in the record demonstrate probable cause for the challenged stop and subsequent search.

## ARGUMENT

### I. Yager's Motion for *In Camera* Review of Certain Presentence Reports Should be Denied Without Prejudice.

Yager requests an *in camera* review of the presentence reports (PSR) of four former defendants who are potential witnesses against him. Three pleaded guilty to separate charges involving criminal activity that is part of the racketeering conspiracy charged in this case. The fourth was a co-defendant who was charged with Yager and who was convicted at the March 2000 trial of this case. Yager asserts that because he expects the four to be witnesses at his trial, the Fifth and Sixth Amendments to the United States Constitution and *Brady v. Maryland*, 373 U.S. 83 (1963) entitle him to an *in camera* review of those potential witnesses' ordinarily confidential PSRs.

The United States does not object to an *in camera* review by the court, as authorized by the Seventh Circuit in *United States v. Anderson*, 724 F.2d 596, 598 (7th Cir. 1984), but

3

maintains that it is pre-mature to conduct one. Such an *in camera* review should be conducted by the trial judge, who will be in the best position to determine whether the witnesses' PSRs contain either 1) exculpatory material with respect to the defendant that "must be disclosed," or 2) material that impeaches the witness by creating the "reasonable likelihood [that it would] . . . affect[] the trier of fact," in view of "the importance of the witness to the government's case, the extent to which the witness has already been impeached, and the significance of the new impeaching material on the witness' credibility." *Id.* The government submits that it is impossible for the magistrate judge to make such a determination at this point. Only the trial judge, after hearing the testimony of each witness and the degree to which he is impeached by other evidence will be able to properly make the determination as to whether any portion of that witness' PSR must be disclosed.

### A. Authority for an *in camera* inspection

Fed. R. Crim. P. 32 governs the procedure for preparing and disclosing a pre-sentence report as a tool to assist the court at sentencing. The Rule does not provide any authorization for disclosure of the report to third parties and the Seventh Circuit has long recognized "the critical importance of maintaining the confidentiality of presentence reports." *United States v. McGee* 408 F.3d 966, 973 (7th Cir. 2005) (quoting *United State v. Cyphers*, 553 F. 2d 1064, 1069 (7th Cir. 1977)). In *United States v. Corbett*, 879 F2d. 224, 229-30 (7th Cir. 1989), the Seventh Circuit underscored the importance of maintaining the confidentiality of presentence reports:

> [I]t is essential for district courts to receive full disclosure of information relevant to sentencing, especially considering the role the presentence reports play in guidelines sentencing and the defendant may not be as forthcoming with information if he knows that his spurned confederates will have access to the report.

Most courts that have considered the question of third party disclosure have sought to "balance the desirability of confidentiality against the need of the moving party for disclosure. In

4

most cases, addressing a variety of circumstances, including requests for the presentence reports for codefendants and witnesses, courts have found disclosure unwarranted." *See United States v. Charmer Industries, Inc.*, 711 F2d 1164, 1173 (2d Cir. 1983) (collecting cases.)

The Seventh Circuit recognizes that notwithstanding the critical importance of maintaining confidentiality of presentence reports, there may be some circumstances where disclosure may be *absolutely essential* to the effective presentation of a defense and therefore required in the interests of justice. *Cyphers*, 553 F.2d at 1069, (citing *United States v. Figurski*, 545 F2d 389, 391-92 (4th Cir. 1976)) (emphasis added.) Additionally, because a presentence report is a confidential document prepared by the probation department as an arm of the court, it is not subject to production by the government under the Rules of Criminal Procedure or the requirements of *Brady v. Maryland.* Rather, its contents may be disclosed only by order of the court following *in camera* inspection. *See, Anderson,* 724 F.2d at 598; *McGee*, 408 F.3d at 974.

### B. The standard for disclosure

A defendant's right to an *in camera* inspection of a presentence report, however, does not mean he has a right to disclosure. When making a determination regarding the need for disclosure of a witness's presentence report, the court must consider the issue of materiality. In *Anderson*, the Seventh Circuit adopted the disclosure standard that the Fourth Circuit had articulated in *Figurski:*

> If the report contains exculpatory material, that part must be disclosed. If the report contains only material impeaching the witness, disclosure is required only when there is a reasonable likelihood of affecting the trier of fact. Whether there is such a likelihood depends upon a number of factors such as the importance of the witness to the government's case, the extent to which the witness has already been impeached, and the significance of the new impeaching material on the witnesses' credibility. Appraisal of some of these factors may indicate that the ruling on the disclosure must be delayed until proffers of evidence can be made or until the government's case or the entire case has been presented so that the protected information may be examined in context.

5

It follows that, when requested to exhibit such a report, the district court should examine *in camera* and disclose only those portions, if less than all, of the report which meet the test we prescribe. If the exhibition is denied, the denial should be an informed one based upon the district court's conclusion that the information contained therein fails to meet the prescribed test.

*Anderson,* 724 F.2d at 598*; Figurski,* 545 F.2d at 398-99.

### B. Disclosure Analysis

The government submits that *in camera* inspection will reveal that there is no basis for disclosure of any portion of the four presentence reports. The government submits that none of the reports will contain material that is exculpatory to Yager and, further, that none will contain impeachment materials that would be absolutely essential to the effective presentation of his defense. Therefore, pursuant to *Anderson*, no disclosure of any portion of the four reports is required in the interests of justice.

In his motion, Yager contends that the reports are "likely" to contain statements of witnesses, in the form of the witnesses' version of the offense, which are either inconsistent with other statements that the witnesses have given about their own role in the same offenses with which Yager has been charged, inconsistent with the statements of other witnesses, or inconsistent with other evidence in the case. Accordingly, Yager asserts that he is entitled to have the PSR statements. Yager also contends that the presentence reports may contain certain other useful information, such as information about the witnesses' drug use during the relevant time period, the witnesses' criminal history, the witnesses' mental health history, and the witnesses' expectation of benefit. Again, the standard for disclosure is not whether information in the report may prove useful to the defense, but rather whether it is *absolutely essential* to the effective presentation of a defense and therefore required in the interests of justice. *Cyphers*, 553 F2d at 1069, (citing *Figurski,* 545 F2d at 391-92.)
6
Case 2:97-cr-00098-JPS   Filed 05/08/15   Page 6 of 15   Document 2100

In analyzing the necessity of disclosure, the court must assess the role that the former-defendant witness will play at the trial of the defendant, the degree to which the information is impeaching, and if impeaching, the degree to which the information is available through some other means.

First, it is relevant to the court's disclosure analysis, that while each of these four individuals are expected to be important to the government's case against Yager, the case will not turn on the testimony of any one of the four or even on the testimony of all four. As was true at the trials of Yager's co-defendants, many other witnesses and items of physical evidence will comprise the mosaic of evidence that the government will present to establish his guilt.

Second, the information that Yager seeks will likely have marginal impeachment value, if at any all, and is available from other sources. With regard to the offenders "version of the offense," as contained in each PSR, Yager asserts that these statements may be useful because they are potentially inconsistent with other past statements the witness, inconsistent with the statements of other witnesses, or inconsistent with other evidence in the case. The Seventh Circuit has opined, however, that an offender's version of the offense contained within a presentence report is not a "statement" of a defendant within the meaning of the Jencks Act.[1] This is because the reports are prepared by probation officers to be used primarily as an aid to district courts at sentencing and the adoption of the government's version is usually the result of little more than the defendant's failure to submit his own version of the offense or objections to the government's version. *McGee,* 408 F3d at 973. This assessment is particularly true in a multi-defendant conspiracy case like this. Here, much or all of the government's version of the offense is a summary of the entire racketeering case which appears verbatim, or almost verbatim, in the presentence reports of multiple defendants convicted in this case. Accordingly, any

---

[1] 18 U.S.C. § 3500(b).

7

Case 2:97-cr-00098-JPS   Filed 05/08/15   Page 7 of 15   Document 2100

particular defendant may not have had personal knowledge of, or even have been in personal agreement with, all portions of the government's version. The failure of a former-defendant witness, or his lawyer, to object to or to express disagreement with some portion of the government's version of the offense cannot reasonably be construed as a witness statement within the meaning of *Jencks*.

More importantly, during the course of his cooperation, each of these four potential witnesses did make multiple statements about these offenses and his own participation therein. The discovery material provided by the government contains copies of these statements, memorialized in the various reports of interview, which are extensive in nature. The government has also provided copies of the witnesses' grand jury and trial testimony, from trials held in this district and from related trials held in Florida and Ohio.[2] Because the defendant already possesses these non-protected statements to mine for possible inconsistencies, he cannot demonstrate that disclosure of offender versions from PSRs is essential to his defense.

Additionally, the PSRs will reveal no legitimate basis for disclosure of the other materials that Yager opines that the reports are "likely" to contain. The government submits that the court will find no evidence, within the reports or elsewhere, that any of these four potential witnesses has mental health issues. With the regard to drug use, to the extent that any of the potential witnesses were drug users during the relevant time period, the issue has been explored during their previous testimony. Thus, to the extent that the PSR contains any information concerning their drug use, the information would be cumulative and not essential to Yager's defense.

---

[2] One witness testified before the grand jury in this case and at the March 2000 trial of the co-defendants, the separate, September 2000 trial of Harvey Powers, and the 2001 Florida trial of former Outlaw national boss, Harry Bowman. A second witness testified at the Bowman trial and the 2003 Florida trial of the successor Outlaw national boss, Frank Wheeler. The two remaining witnesses testified at the Florida Wheeler trial, before the grand jury in Ohio, and at the 2003 Wheeler trial in Ohio. Some of the racketeering acts that were charged in this district were also alleged in the indictments tried in Florida and Ohio.

With regard to the witnesses' criminal histories, the government maintains that the PSRs are neither the only, nor the best, source of information concerning this topic. This information is available through other law enforcement materials that, if not already in the discovery material, will be provided and updated by the government before trial. Moreover, to the extent that the PSRs may contain information about past convictions too old to be captured in the existing law enforcement networks, the convictions would be generally unavailable for use as impeachment under Fed. R. Evid. 609(b).

Finally, with regard to the potential for the witnesses to shade their testimony to curry favor with the government or impress the court, it is relevant that all four have long ago received the benefit of their bargain with the government. But to the extent that the defendant chooses to cross examine about the benefits the witness has received, the defendant has or will have prior to trial, the relevant plea agreements, 5K1.1 and Rule 35 sentencing motions and amended judgments relevant to this question.

In the final analysis, the government contends that the court should conclude that Yager is not entitled to the disclosure of any portion of these four presentence reports, because his need for the reports or any portions thereof is outweighed by the well-recognized, critical importance of maintaining the confidentiality of presentence reports. To ensure that this is true, however, the magistrate judge should allow the district court, as the trial judge, to perform the *in camera* review, because only after the trial judge has had the opportunity to hear the witness's testimony, will the court be in a position to determine whether the PSR contains information essential to Yager's defense. Accordingly the motion for an *in camera* inspection of these four presentence reports should be denied without prejudice, with leave to renew the motion before the district court.

## II. Yager's Motion to Compel Production of Information Regarding Cooperating Witnesses Should be Denied

Yager asks the court to compel the government to produce and furnish to defense counsel the addresses of its cooperating witnesses and to provide specific exculpatory evidence. The motion should be denied.

### A. Disclosure of addresses of cooperating witnesses

Yager cites *Smith v. Illinois*, 390 U.S. 129, 131 (1968) for the proposition that the government should be compelled to provide addresses for the witnesses it intends to call at trial. *Smith* does not support his position and this motion should be denied.

First, the holding in *Smith* does not apply to this case.[3] Contrary to the defendant's position, he has no right to learn either the names of or the location information for the prosecution's witnesses. *See United States v. Edwards*, 47 F.3d 841 (7th Cir. 1995). In *Edwards*, the prosecution withheld the name of a proposed 404(b) witness, explaining that the government feared the witness might be harmed or intimidated. The witness's name along with a letter detailing his criminal history, the benefits he would receive for testifying, and his anticipated testimony were delivered to the defense counsel on the morning of the witness's testimony. On appeal, the Seventh Circuit found that the district court's refusal to exclude the testimony was proper. The Court held that the defendants were not entitled to earlier disclosure of his testimony, stating, "It is well settled that the Constitution does not require pretrial disclosure of

---

[3] In *Smith*, defense counsel unsuccessfully attempted to elicit, on cross examination, the current address of a witness who admitted to giving a false name during testimony. The witness was the sole eye witness against the defendant, who testified to a wholly different version of the events. The Supreme Court found the district court's limitation of this avenue of cross examination was a *per se* violation of the Confrontation Clause. Since the *Smith* decision, various courts including the Seventh Circuit have distinguished it. See *United States v. Teller* 412 F. 2d 374, 380 (7th Cir. 1969); *United States v. Lee*, 413 F2d 910, 915 (7th Cir. 1969); *United States v. Palermo*, 410 F.2d 468, 472 (7th Cir. 1969); *United States v. Baker,* 419 F2d 83 87 (2nd Cir 1969); *Clark v. Rickettes,* 958 F.2d 851,855 (9th Cir. 1991); *accord, United States v. Cavallaro,* 553 F2d 300, 304-05 (2nd Cir. 1977). Subsequently the Supreme Court backed off of its *per se* violation analysis, requiring Confrontation Clause claims such as Smith's to be the subject of a harmless error analysis. *See Delaware v. Van Arsdall* 475 U.S. 673, 682-83 (1986).

prosecution witnesses… [n]or does Fed R. Crim. P 16, which governs discovery in criminal cases." The Court acknowledged that the district court could order such disclosure under appropriate circumstances but concluded that the circumstances before it did not call for such a measure. *Edwards,* 47 F.3d at 843.

In *Edwards*, prosecutors proffered concerns like those present here – that the witness feared retaliation based upon assertions that he had been threatened, and that there was evidence that the defendants routinely used firearms in connection with their criminal activities. The *Edwards* court also noted that even though the defendants were in custody, other members of their conspiracy were at large.

Here, testimony adduced at the trials of the co-defendants, and accordingly, part of the record in this case, has demonstrated the Outlaw Motorcycle Club is a violent gang whose members committed murders and assaults in pursuit of their desire to create fear in others and to control territory, and who killed fellow club members who were deemed to be government cooperators or "snitches." Club bosses, including Yager, directed and authorized this activity. The government proved that various club expressions, including "God Forgives, Outlaws Don't," and "Snitches are a Dying Breed," were not idle club threats; they were a credo by which the club lived and controlled others. Based on safety concerns, a number of the potential witnesses for this case agreed to be placed and were placed under the protection of the United States Marshal Service Witness Protection program and have been re-located with new identities.

Notwithstanding the government's concern for the safety of its potential witnesses, however, the government has disclosed in discovery the names of potential witnesses and other information about those witnesses, including reports of interview with them, prior testimony by them, benefits received by them, and their criminal histories. In addition, and not less than two

weeks before trial, government counsel will provide an updated summary of known impeachment evidence, including the criminal history of each witness the government actually plans to call at trial. This information should be sufficient to enable the defendant to craft his defense.

Because Yager is not entitled, under the Constitution or the Federal Rules of Criminal Procedure, to have addresses for government witnesses, and because under the circumstances there is no compelling reason for the government to disclose the current location of any potential witness, this motion should be denied.

### B. Disclosure of Exculpatory Evidence/Credibility Information/Evidence of Non-Involvement

Yager also asks the court to compel the government to produce certain items that he deems to be exculpatory evidence. He includes an exhaustive list of those items he deems to be potentially exculpatory.

Yager's motion should be denied, because as he concedes in his motion, the government is following its open file policy in this case and he has failed to confer with the government about this motion before bringing it under Criminal Local Rule 16(b). Additionally, government counsel are well aware of their *Brady/Giglio* obligations and will comply with those obligations.

### III. Yager's Motion for a Pretrial Hearing on the Admissibility of Non-Hearsay Co-Conspirator Statements Should be Denied

Yager has also requested a pretrial *Santiago* hearing regarding the admissibility of coconspirator statements. Co-conspirator statements are admissible if the government establishes, by a preponderance of the evidence, that a conspiracy existed, that the defendant and the declarant were members of the conspiracy, and that the proffered statements were made

12

during the course of and in furtherance of the conspiracy. Fed. R. Evid. 801(d)(2)(E); *United States v. Santiago,* 582 F.2d 1128, 1134-35 (7th Cir. 1978).

The longstanding practice in this district is to allow the trial judge to handle such motions at trial and to allow the government to proceed at trial by way of proffer. *See e.g., United States v. VanDaalwyk*, 840 F.2d 494, 496 (7th Cir. 1988). Although a pretrial hearing is one of the ways the issue can be resolved, it is not necessarily the preferred way. The Seventh Circuit has noted that "holding a full blown pretrial hearing for a decision which is not final is an inefficient means of resolving" this issue. *United States v. Andrus,* 775 F.2d 825, 837 (7th Cir. 1985). Thus, a trial court may "admit the [co-conspirators'] statements subject to the government's eventual proof by a preponderance of the evidence of the elements required under Rule 801(d)(2)(E)." *Id.* Here, the district court has twice handled the rulings on the admissibility of non-hearsay co-conspirator statements during the course of trial, a procedure that has proved to be both efficient and legally sound. Yager's contention – that good reasons now compel the court to revise this practice for his separate trial – is unpersuasive. The fact that the government has previously tried this case does not render a separate pretrial hearing more efficient for the court or the parties. Nor does it matter whether Yager can identify from his review of the previous trial transcripts which statements may now be offered against him at his trial. He is not entitled to a script of the government's case against him, nor is he entitled to a pretrial hearing to obtain one.

Government counsel are well aware that if they fail to meet their threshold showing at trial, the defendant is entitled to have the statements stricken or even to move for a mistrial. *VanDaalwyk, 840 F.2d at 496.* Nonetheless, government counsel are confident that this issue is best addressed by the district court during the course of the trial. Accordingly, Yager's motion

13

for a pretrial hearing on the admission of non-hearsay co-conspirator statements should be denied.

### IV. Motion to Suppress Evidence

Yager has also filed a motion to suppress evidence obtained during a traffic stop of a car that he was driving home from the Lancaster Speedway in Lancaster, New York on September 25, 1994. On April 29, 2015, the government filed its response to Yager's request for an evidentiary hearing and a ruling on the merits. For the reasons set forth in that memorandum, Yager's request for a hearing and for the suppression of evidence should be denied.

### CONCLUSION

For these reasons, defendant Randy Yager's motions for disclosure of presentence reports and witness addresses, for a pre-trial *Santiago* hearing, and for suppression of evidence should be denied.

Respectfully submitted,

JAMES L. SANTELLE
United States Attorney

BY: s/Carol L. Kraft
Carol L. Kraft
WSB # 1000117
carol.kraft@usdoj.gov
Scott J. Campbell
WSB # 1017721
scott.campbell@usdoj.gov
Laura S. Kwaterski
WSB # 1055485
laura.kwaterski@usdoj.gov
Assistant Unites States Attorneys
517 East Wisconsin Avenue, #530
Milwaukee, Wisconsin 53202
Telephone: 414 297-1700
Fax: 414 297-1738