UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

UNITED STATES OF AMERICA,

    *Plaintiff*,

    v.                            Case No. 97 CR 98

RANDY YAGER,

    *Defendant*.

## RANDY YAGER'S POST-HEARING BRIEF IN SUPPORT OF HIS MOTION TO SUPPRESS

### STATEMENT OF FACTS

John Morrow was a New York State trooper for 26 years from 1986 until 2012.

Approaching Silver Creek, N.Y., Route 20 forks. Driving straight forward, Route 20 is also known as Central Avenue. Forking to the right it becomes Route 5 and Business Route 20 and is also known as Howard Street. **Exhibit 1A** At the fork, traffic intending to proceed from Route 20 onto Howard Street veers right, as there is no cross or merging traffic. **Exhibits 4, 5.**

### 1994

The events at issue occurred 22 years ago on September 25, 1994. On that date, Trooper Morrow heard reports of an incident at the Lancaster Speedway on his

patrol car radio. He determined that he would wait by the side of the road to look out for automobiles with out-of-state plates that might be coming from the direction of the Speedway. It was his intent to speak with potential witnesses. He agreed that he could not have accomplished that goal without stopping the potential witnesses. **45:15-19.**[1] **Exhibit 21, Bates 5588-9**

Observing that Mr. Yager's car had out-of-state license plates, Trooper Morrow followed the car for more than 6 miles, then stopped it. **44:19-25, 45:1-2, 20-23** Trooper Morrow authored no report of the incident, its only documentation having been the citation which Morrow issued. **40:8**

That citation charged Mr. Yager with faulty equipment, specifically his turn signal, and noted a U-turn. **Exhibit 7**.

## 2000

Fifteen years later Trooper Morrow testified in this case during the trial of other defendants as follows:

> As I was following the vehicle westbound on state Route 20 and seen the infraction, called for backup. They told me they were on route. The vehicle, he intended–I don't know if he intended to or not, but he was traveling westbound on 20. *He missed the turn and continued westbound on 20*. So I activated my emergency light to pull him over. **40:20-41:1, Exhibit 21, Bates # 005593** [emphasis supplied]

---

[1] Unless otherwise designated, all references are to the transcript of the hearing held in this matter on December 23, 2015, Document #2121, and refer to page and line numbers.

2

He did not describe the violation as having changed lanes without signaling. He explained the reason for his stop thusly:

> That was for not using directional - - the Route 20 at that - - at some point is a four lane road. It splits off as a truck route to the right at a signal light. He did not use his turn signal to make the turn. That's what I wrote the ticket for. **Exhibit 21, bates 5597-8**

Morrow stated that he had "no way of gauging" whether his memory about this occurrence was better on March 30, 2000 than "today" (December 23, 2015). **44:2-4** He admitted, though, that he was not one of those folks whose memory improves with age. **40:2-3**.

## 2015

Trooper Morrow was unable to recall whether the traffic signs and painted pavement dividers and directional arrows at the intersection of Route 20 with Route 5, as depicted on the Government's exhibits, were extant on the date on which he stopped Mr. Yager's automobile. Similarly he could not recall such details at Route 20's intersection in the town of Silver Creek. **54:18-58:1, 11-17**.

More than 21 years later, though, Trooper Morrow said that he stopped Mr. Yager's vehicle because it made a right-hand turn from the left most "lane" off of westbound Highway 20 onto Highway 5 without signaling a lane change. **22:13-23:2, 41:15-18** After having observed what he thought was a dangerous move, he did not stop the car, but let it continue for two more miles into the village before pulling it

3

over. **42:8-12** He also said that the court reporter erred, and that he did not say what is in the March 30, 2000 trial transcript. He said that what he'd said 15 years earlier, about the event that had occurred 21 years ago, was that "he missed the turn to continue westbound on 20." **64:7-18** He also said that the "turn" referred to one other than the intersection of Routes 20 and 5 where he'd observed the claimed infraction. He recalled this because only "I'm refreshing my recollection from these transcripts." and had no specific recollection without the transcripts. **68:11-18**. Prior to his 2015 testimony, Trooper Morrow discussed his 2000 testimony with agent Devalkenaer and the prosecutors. **41:2-12.**

Morrow offered no testimony about any other traffic at the intersection other than his own vehicle some distance behind Mr. Yager's. Nor did he testify that there was another vehicle in the right hand "lane" of Route 20 or that Mr. Yager's lane change actually endangered or interfered with traffic. Rather, he said that it "could" have been dangerous. **41:22**.

He stated: "I couldn't even guess" how many times I had pulled someone over for making a turn without a directional. "A lot." **42:18-22** and "a lot" of times between September 25, 1994 and the first time that he testified about this; and a lot of times since then. **42:23-25, 43:1-2**. "I know that violation pretty well." **42:3-4**.

That violation is found at N.Y. Vehicle & Traffic Laws § 1163 (McKinney 2012)

4

N.Y. Vehicle and Traffic Law §375.18 (McKinney 2012)[2], for which Trooper Morrow cited Mr. Yager in 1994, prohibits operating a vehicle that is not "equipped with directional signals approved by the commissioner." **52:7-9**

Trooper Morrow never observed faulty equipment on Mr. Yager's car. **46:5-7**

The citation given Mr. Yager bore the handwritten note "U-turn." 21 years later, Trooper Morrow said that it was really "R-turn," for "right turn." **54:2-3** Here is what the note looks like:



Here is what Trooper Morrow's R's on the same document look .like:



---

[2] The Sections of New York law cited in this brief employ the same as the verbiage in 1994.

Case 2:97-cr-00098-JPS   Filed 01/18/16   Page 5 of 10   Document 2122



There are 10 R's. All were written on the same document on the same date at the same time. All are finished; including the R in the word "turn" following the U he now questions. The top loop on each is a slanted oval, and each has two "legs." The "U" which Trooper Morrow said was an unfinished R is not a slanted oval and has no "legs."

6

**ARGUMENT**

More than 21 years ago, former New York State Trooper John Morrow set-out to interview potential witnesses as part of investigation into an incident at the Lancaster Speedway. The only way to find and interview potential witnesses was to stop them. Seeing that Randy Yager's car had out-of-state license plates, Morrow followed the car for more than six miles, then stopped the car.

Morrow's basis for stopping Yager's car was documented only on the citation; no additional contemporaneous report relating to the stop was written. The citation is the best evidence of Morrow's reasons for the stop. But the reasons stated by Morrow on the citation did not occur. Trooper Morrow recalls neither a defective turn signal nor a U-turn. 15 years later he'd thought that he'd stopped Mr. Yager for the failure to employ a turn signal. That is an offense about which Trooper Morrow said he "knew that violation pretty well," as he'd cited drivers for it "a lot" over the course of his career. It's not what he cited Mr. Yager for that day. Over 21 years later he'd thought that he'd also stopped him because of a dangerous lane change. It's not what he cited Mr. Yager for either.

That Trooper Morrow has on three different dates given three different reasons for stopping Mr. Yager is exemplary of the fragility of memory. Memory is affected by the passage of time; were it not, no transcript of this hearing, held only

7

a month ago, would have been necessary. It is affected yet more by a long passage of time. That is why contemporary reports--again, like the transcript of this hearing--are entitled to great weight.

The question before the court is not, as the Government would have it, whether the transcript from 2015 is incorrect. The question before the court is what occurred on September 25, 1994.

Trooper Morrow had no recollection of Mr. Yager's automobile having had a defective turn signal; nor did he recall a U-turn. The stated reasons for the stop recorded on the ticket issued by Trooper Morrow contemporaneous the arrest he effected were pretextual. The evidence derived from that stop must be suppressed

Trooper Morrow, presumably no stranger to the stretch of roadway in question, has no recollection whether there were dividing lines or directional arrows or other instructions painted on the roadway at the confluence of Routes 20 and 5. Nor did he have any recollection of what traffic signs were extant on September 25, 1994, other than a traffic light. Thus there is no evidence of the establishment of lanes from which a driver could change, or signal a change. Nor was a driver turning right onto Route 5 from the fork in the road required to give a signal as the evidence did not establish either an intersection, as that term is defined by New York law, or the presence of other automobiles whose safety might be compromised.

8

N.Y. Vehicle & Traffic Law § 1163 (McKinney 2012). Section 1163 (a) provides that:

> No person shall turn a vehicle at an *intersection* unless the vehicle is in proper position upon the roadway as required in [§ 1160], or turn a vehicle to enter a private road or driveway, or otherwise turn a vehicle from a direct course or move right or left upon a roadway unless and until such movement can be made with reasonable safety. No person shall so turn any vehicle without giving an appropriate signal in the manner hereinafter provided.

An intersection is defined by N.Y. Vehicle & Traffic Law § 120 (a) (McKinney 2012), thusly:

> The area embraced within the prolongation or connection of the lateral curb lines, or, if none, then the lateral boundary lines of the roadways of two highways which join one another at, or approximately at, right angles, or the area within which vehicles traveling upon different highways joining at any other angle may come in conflict.

Had Routes 20 and 5 joined at right angles, the entire confluence of the two roads would have comprised an intersection. But they joined at an angle, and where Route 20 forked to the right to join Route 5 was not an "area within which vehicles traveling upon different highways ... may come in conflict." No signal was required.

Thus even if more than 21 years later Trooper Morrow can recall this one stop better than the roadway he patrolled for a living, he described no unlawful act which warranted stopping Mr. Yager's vehicle. The evidence derived from that stop must be suppressed.

9

# CONCLUSION

Over two decades, Trooper Morrow has given three versions of the reason for stopping Mr. Yager's car, none of which are supported by the evidence or law. The evidence does not establish that Trooper Morrow's stop was based on suspicion of Yager committing a traffic violation; whichever violation that is. No other exception to the Fourth Amendment justifies the stop of Yager and the subsequent search of his Oldsmobile. For these reasons the Court ought suppress all evidence obtained as a result fo the unlawful searches and seizures on September 25, 1994.

Dated this 18th day of January, 2016.

Respectfully submitted,

RANDY YAGER, *Defendant.*

 /s/
Stephen P. Hurley
*Wisconsin Bar No.* 1015654

HURLEY, BURISH & STANTON, S.C.
P.O. Box 1528
Madison Wisconsin 53701-1528
(608) 257-0945