# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WISCONSIN

UNITED STATES OF AMERICA,

        Plaintiff,

      v.                               Case No. 97-CR-98

RANDY YAGER,

        Defendant.

## UNITED STATES' RESPONSE TO
## DEFENDANT'S MOTION TO SUPPRESS EVIDENCE

### INTRODUCTION

Defendant Randy Yager's motion to suppress evidence presents a single remaining issue: whether New York State Trooper John Morrow had probable cause to stop the vehicle that Yager was driving on the morning of September 25, 1994. As Trooper Morrow testified at the December 23, 2015 evidentiary hearing, and at two prior trials of other defendants in this case, he initiated that traffic stop of Yager's vehicle on September 25, 1994 because Yager failed to use a directional signal when he turned right at the controlled intersection of New York State Route 20 and New York State Route 5 (Truck Route 20) just east of Silver Creek, New York. That testimony was corroborated by the traffic ticket that Trooper Morrow issued to Yager on September 25, 1994, and by other evidence, including where the stop occurred and the direction of

Yager's vehicle after it was pulled over in Silver Creek. Yager, who presented no evidence of his own at the December 23, 2015 hearing, has given the Court no reason to doubt Trooper Morrow's consistent testimony that he stopped Yager for failing to use a directional signal when making a right turn at a controlled intersection. Accordingly, Yager's motion should be denied.

## BACKGROUND

Yager is charged in a two-count second superseding indictment with conducting the affairs of an enterprise, the White Region of the Outlaw Motorcycle Club, through a pattern of racketeering, in violation of 18 U.S.C. § 1962(c); and with conspiracy to conduct the affairs of the enterprise, through a pattern of racketeering, in violation of 18 U.S.C. § 1962(d). R. 2101. The indictment alleges eight underlying racketeering acts, including Racketeering Act 3, which alleges that Yager committed acts of murder in the Western District of New York on or about September 25, 1994. The murder allegations arise from an Outlaws/Hell's Angels confrontation at a speedway in Lancaster, New York.

On April 24, 2015, Yager filed a motion to suppress evidence obtained during a traffic stop in Silver Creek, New York, on September 25, 1994. R. 2091. In testimony given at two prior trials of Yager's co-defendants, New York State Trooper John Morrow testified that while he was on duty near the town of Brant, New York, he heard radio transmissions concerning a violent incident at the Lancaster Speedway. Trooper Morrow then observed a vehicle with Illinois license plates traveling westbound on New York State Route 20, and stopped the vehicle after observing it commit a traffic

2

violation. Upon approaching the vehicle, Trooper Morrow observed a can of mace in the vehicle, which at that time was illegal in New York. Yager and his passengers admitted that they were coming from the Lancaster Speedway. In his subsequent search of the vehicle, Trooper Morrow recovered a Hell's Angels vest with punctures and blood stains that ultimately was determined to have been worn by Michael Quale who had been stabbed to death at the Lancaster speedway. R. 1788 at 793-825; R. 1849 at 1820-1844.

In his motion to suppress evidence resulting from the stop, Yager contended that Trooper Morrow had no probable cause to stop Yager's vehicle on September 25, 1994. Yager further contended that Trooper Morrow's subsequent search of the car and its occupants was not supported by any exception to the Fourth Amendment warrant requirement. Yager argued that Trooper Morrow's testimony at two prior trials conducted in this case did not establish probable cause for the stop for either of two reasons. First, Yager contended that evidence that he had been pulled over on Route 20 (which is also known as Central Avenue for a stretch within Silver Creek) suggested that he had not, in fact, turned right from Route 20 onto Route 5 as Trooper Morrow had previously testified. In the alternative, Yager argued that even if Yager had turned right from Route 20 onto Route 5, he did not need to use a directional signal because Route 5 was simply a lane that "curves off in a different direction" from Route 20. R. 2091 at 6. Attached to Yager's motion was a photograph of a map from a 1986 *Department of Interior* Geological Survey of Silver Creek, New York; a Google map street

3

view of New York State Routes 20 and 5; and two current Google maps showing the Route 20 in the area where he contended he had been followed and stopped.

The United States responded that Yager's motion should be denied in its entirety without an evidentiary hearing. R. 2099. The government cited the testimony that Trooper Morrow had provided at the two previous trials in this case, argued that the testimony amply established probable cause for the stop and the subsequent search of the vehicles and its occupants. *Id.* In reply, Yager further argued that an evidentiary hearing would show *either* that if he followed Route 20/Central Avenue onto Route 5/Howard Street as stated in Morrow's prior testimony, Yager was not required to signal, because the turn was not at an intersection *or* that if he did not turn onto Howard Street (Route 5) but remained on Central Avenue (Route 20) as he opined that trial testimony by Silver Creek Officer Timothy Heavern seemed to suggest, there was no need for a turn signal. R. 2103. In either case, Yager contended, there was no traffic violation and thus no probable cause for the stop.

On November 2, 2015, the Court issued an order holding in abeyance a ruling on the motion to suppress. R. 2118. The Court granted Yager's motion for an evidentiary hearing noting that the location of the stop was in dispute. The Court's order, however, found that there was no material dispute relating to the facts that occurred after the stop, and, after reviewing those facts, the Court concluded that Trooper Morrow was entitled to search the vehicle for contraband. Thus, the sole issue now before the Court is whether there was probable cause to stop the vehicle that Randy Yager was driving on the morning of September 25, 1994.

4

## FACTS

Trooper Morrow has now testified three times in this Court regarding his execution of a traffic stop of Yager's vehicle on September 25, 1994. In 2000 and 2003, while Yager was a fugitive, this Court conducted two separate jury trials of other defendants. Trooper Morrow testified at both of those trials. Despite Yager's protestations to the contrary, during both jury trials and at the December 23, 2015 evidentiary hearing, Trooper Morrow testified consistently as to why he initiated a traffic stop of Yager's vehicle on September 25, 1994: Trooper Morrow did so because he saw Yager commit a traffic violation. Specifically, Trooper Morrow saw the vehicle fail to use a directional signal when turning right at the controlled intersection of New York State Route 20 and State Route 5 (Truck Route 20). The traffic citation for failure to use a directional signal that Trooper Morrow issued to Yager that day, offered into evidence at the evidentiary hearing as Exhibit 7, corroborates Trooper Morrow's testimony.

Trooper Morrow testified at the evidentiary hearing and at the March 2000 trial, that while he was on road patrol on the morning of September 25, 1994, he heard initial radio transmissions regarding the melee that occurred that morning at the Lancaster Speedway. At approximately 9:15 or 9:30 a.m. that morning, Trooper Morrow "was listening to the police radio, and there were multiple calls . . . to respond to the Lancaster Speedway, approximately 45 miles or so from where [he] was located,

5

regarding some kind of incident; . . . may have been a shooting or a stabbing." Hrg. Tr. 8-9; Trial Tr. 5588.[1] After hearing the initial transmission, Trooper Morrow monitored the car-to-car transmissions regarding the melee and heard that "police officers were stopping a lot of [vehicles with] Midwestern plates: Indiana, Illinois, Ohio, plates like that . . . so [he] thought if anyone was leaving that scene and going back to the Midwest, if they did not want to be seen by law enforcement, they might not stay on a controlled access highway; so they might get on one of the other routes, like Route 20. And that's what [he] did. [He] positioned himself at State Route 20 in the Town of Brant." Hrg. Tr. 10; Trial Tr. 5588-89.

After remaining at his fixed location on State Route 20 in the Town of Brant for about an hour, Trooper Morrow noticed a vehicle without a front license plate, traveling westbound on State Route 20. This vehicle got his attention because New York law requires a vehicle to display two plates. Hrg. Tr. 11; Trial Tr. 5590. As he pulled out to follow the car, Trooper Morrow observed that "the car had out-of-state, Illinois plates, and they were also dealer plates on an approximately 20 year old car." Hrg. Tr. 11-12; Bates #7197 & Trial Tr. 5590.[2] Trooper Morrow deemed this notable because in his experience it is unusual to see dealer plates on such an old car and because of the general restrictions on the use of dealer plates. Hrg. Tr. 12. He decided to follow the vehicle while attempting to contact the Lancaster police to determine whether the car

---

[1] Citations are to the transcript of the December 23, 2015 evidentiary hearing and the bates-stamped page number of the jury trial transcript of *United States v. O'Neill*, 97-CR-98.
[2] In his earlier trial testimony, Trooper Morrow erroneously testified that the vehicle had an Indiana plate.

matched the description of any suspect vehicles and to determine whether Lancaster police had identified any suspects in the melee that occurred that morning. He also tried to get information about the Illinois dealer plate. Hrg. Tr. 12; Trial Tr. 5591. Trooper Morrow was unsuccessful in contacting Lancaster police to obtain additional information regarding the vehicle. Hrg. Tr. 24; *see also* Trial Tr. 5591-5592 (testifying that because "there was chaos" at the Lancaster police station "[he] really didn't get through to anyone to confirm if it might be a suspect vehicle or not").

As Trooper Morrow was following the vehicle and attempting to contact the Lancaster police, he was approaching the intersection of State Route 20 and State Route 5, which intersection had a traffic control light. Hrg. Tr. 12. At the evidentiary hearing, with the aid of photographs,[3] Trooper Morrow explained that Route 20 had four lanes (two westbound lanes and two eastbound lanes) at its intersection with State Route 5, and that Yager was traveling in the leftmost westbound lane, which is the lane to continue straight on State Route 20. Hrg. Tr. 13. As Yager's vehicle was passing underneath the traffic control light at the intersection, the vehicle turned right, onto State Route 5, from the leftmost lane and without using its right directional signal. Hrg. Tr. 13, 20. Trial Tr. 5592.

Trooper Morrow testified that Yager's failure to use a directional signal when turning right from the left-hand lane of westbound State Route 20 onto State Route 5 is

---

[3] The photographs were a combination of several photographs taken by Trooper Morrow shortly before the hearing and several obtained through Google maps. Trooper Morrow testified that although he did not recall whether or not there were white markings on the pavement in September 1994, the intersection had not, in his mind, undergone any major changes and appeared to him as it did in September 1994. Hrg. Tr. at 13, 18.

7

a violation of New York state traffic law. Hrg. Tr. 22; *see also* Trial Tr. 5597-5598 (testifying that the traffic infraction was for failure to use a directional and explaining that Route 20, "splits off as a truck route to the right at a signal light [and] [Yager] did not use his turn signal to make a turn"). Not only was this a violation of New York traffic law, but it was also a potentially dangerous one as Yager's vehicle crossed the right-hand lane of State Route 20 in its right turn onto State Route 5 without signaling. Hrg. Tr. 23. After observing the traffic infraction, Trooper Morrow was still waiting for further information about the vehicle and its registration and whether it had been identified as a suspect vehicle from Lancaster. He had hoped to receive the information before making the stop. Hrg. Tr. 24. Ultimately, however, he stopped the car before receiving that information. *Id.*

After observing the traffic violation and while he was calling for backup, Trooper Morrow continued to follow Yager's vehicle on State Route 5, for approximately 1.5 miles, until State Route 5 joined Central Avenue in the Village of Silver Creek, New York. Hrg. Tr. 25, 38. At the T-intersection of State Route 5 and Central Avenue, Yager's vehicle turned left, using its directional signal. After the vehicle made the left turn, however, the driver "then missed a right-hand turn to continue westbound on State Route 20." Hrg. Tr. 27. At that point, the vehicle was proceeding *eastbound* on Central Avenue, the direction from which it had come. Shortly thereafter, and after receiving confirmation that backup was on its way to assist with the traffic stop, Trooper Morrow activated his emergency lights and pulled the vehicle over. Hrg. Tr. 31, 62. For his own safety, Trooper Morrow waited to do so until Yager's vehicle,

8

traveling eastbound through the village had cleared a steep hill and an elbow turn on Central Avenue in Silver Creek. Hrg. Tr. 30-31. After Trooper Morrow activated his emergency lights, Yager pulled over to the right-hand side of the road into an unoccupied parking lot adjacent to the eastbound lane. Hrg. Tr. 31-32. Trooper Morrow identified Yager, the driver, and noted that it had four passengers, whom Trooper Morrow also identified. Hrg. Tr. 36-37. Trooper Morrow issued Yager ticket number TW6411451 for failing to use a directional signal at the intersection of Route 20 and Route 5. Hrg. Tr. 37.

At the December 23 evidentiary hearing, Yager's counsel challenged Trooper Morrow's testimony that Yager, once in Silver Creek, had missed the turn to continue westbound on State Route 20. Counsel referenced a transcript from the 2000 trial of Kevin O'Neill and others, which stated that Trooper Morrow had earlier testified that "he [Yager] was traveling westbound on 20 . . . he missed the turn *and continued* westbound on 20." Hrg. Tr. 46. (emphasis added.) Trooper Morrow explained that there is an error in the transcript of his earlier testimony, perhaps the result of his enunciation or his New York accent, but that what he had said in the earlier testimony was that Yager had "missed the turn *to continue* westbound on 20." Hrg. Tr. 64-65. (emphasis added.) Trooper Morrow further explained that the turn onto Route 20 in Silver Creek was a different turn from the turn at the intersection of Route 20 and Route 5 where he had observed Yager's vehicle fail to signal. Hrg. Tr. 50, 65-66. Trooper Morrow testified that it would be impossible for the vehicle to "continue westbound on 20 *and* be pulled over in the parking lot where he was pulled over," a fact

that Yager did not contest.  Hrg. Tr. 66 (emphasis added). The Court noted that Trooper Morrow's correction makes sense because the transcript, without the correction, is internally inconsistent and does not make sense.  Hrg. Tr. 69.

Trooper Morrow was also cross examined about the ticket that he wrote to Yager for failure to use a directional.  The ticket noted the violation to be "No Directional," but contained the New York Traffic Code citation for defective equipment.  Hrg. Tr. 37, 50. Trooper Morrow admitted that he may have cited the wrong statute section on the ticket. Hrg. Tr. 51, 67.  He reiterated, however, that he observed Yager turn right without using a directional signal and that he, in good faith, believed that to be a violation of New York law and that was the reason he issued the traffic ticket to Yager. Hrg. Tr. 67-68.  Trooper Morrow was also questioned about a notation on the ticket above the violation notation "No Directional," and testified that the notation said "R-turn," not "U-Turn" as suggested by Yager's counsel. Hrg. Tr. 54.

## ARGUMENT

**Trooper Morrow had probable cause to effect the traffic stop of Defendant Yager's vehicle and his motion to suppress must be denied.**

The Fourth Amendment protects citizens against unreasonable searches and seizures.  U.S. Const. amend. IV. The law is well established that an encounter between a law enforcement officer and a citizen implicates the Fourth Amendment only if the officer seizes the citizen. *United States v. Mendenhall*, 446 U.S. 544, 555 (1980); *Terry v. Ohio*, 392 U.S. 1, 19 (1968). "Temporary detention of individuals during the stop of an automobile by the police, even if only for a brief period and for a limited purpose,

Case 2:97-cr-00098-JPS   Filed 01/28/16   Page 10 of 15   Document 2124

constitutes a 'seizure' of 'persons' within the meaning of [the Fourth Amendment]." *Whren v. United States*, 517 U.S. 806, 809-10 (1996). An automobile stop, therefore, is "subject to the constitutional imperative that it not be 'unreasonable' under the circumstances." *Id.*

Generally, a traffic stop is reasonable when the officer has "probable cause to believe that a traffic violation has occurred." *Id.* (citing *Delaware v. Prouse*, 440 U.S. 648, 659 (1979); *Pa. v. Mimms*, 434 U.S. 106, 109 (1977)). "Probable cause requires only a substantial chance of criminal activity, not an actual showing of such activity." *United States v. Schaafsma*, 318 F.3d 718, 722 (7th Cir. 2003) (citing *Illinois v. Gates*, 462 U.S. 213, 244 n.13 (1983)). Police can stop an automobile when they have probable cause to believe that the driver violated even a minor traffic law. *United States v. McDonald*, 453 F.3d 958, 960 (7th Cir. 2006). "Probable cause exists when the circumstances confronting a police officer support the reasonable belief that a driver has committed even a minor traffic offense." *United States v. Muriel*, 418 F.3d 720, 724 (7th Cir. 2005). Where a traffic stop is supported by probable cause, officers may arrest an individual for a minor traffic violation. *Atwater v. Lago Vista*, 532 U.S. 318, 354 (2001).

Here, because Trooper Morrow observed the vehicle operated by Yager fail to use a traffic signal when turning, he had sufficient cause to believe that the operator was violating the law, or that there was a substantial chance that he was violating the law. *See* New York Vehicle Traffic Law § 1163. Given that Trooper Morrow observed the traffic violation, he acted reasonably by stopping and approaching the vehicle to conduct further investigation. *Whren*, 517 U.S. at 809-10; *Atwater*, 532 U.S. at 354; *see also*

11

*United States v. Cashman*, 216 F.3d 582, 586 (7th Cir. 2000) (stating that probable cause exists when "the circumstances confronting a police officer support the reasonable belief that a driver has committed even a minor traffic offense").

Indeed, Trooper Morrow has now testified three times (and been subject to cross-examination three times) regarding his observation that Yager failed to use a directional signal when he turned from State Route 20 onto State Route 5 outside the Village of Silver Creek. The traffic citation Trooper Morrow issued to Yager states, "No Directional," and includes the notation, "R-Turn." There is absolutely no evidence that contradicts Trooper Morrow's observation. To be sure, defense counsel did not present testimony or even affidavits from Yager or any of the passengers in his vehicle on September 25, 1994 to dispute the fact that Yager failed to signal the turn onto Route 5 or to establish that he didn't turn onto Route 5 at all.

In the absence of any evidence contradicting Trooper Morrow's now thrice-repeated testimony regarding the reason for the traffic stop, Yager now argues that the stop was unlawful because, according to Yager, Trooper Morrow simply doesn't remember what actually occurred. Yager contends that the citation shows that Trooper Morrow actually cited Yager for faulty equipment and a U turn[4], and that Trooper Morrow has no independent recollection of the stop. Thus, Yager argues, the Court

---

[4] Yager devotes almost two pages of the fact section of his brief to enlargements of the traffic citation in an attempt to establish that Morrow's notation of "R turn," should actually be read as "U turn." The contention is fanciful, at best, and is contradicted by Trooper Morrow's testimony. Indeed, whether the "leg" of the R is now simply illegible; given that what we have is a copy of a copy of the twenty-two year old ticket (Mr. Yager retained the original), or whether Trooper Morrow was not sufficiently diligent in making the second "leg" of the "R," is irrelevant to whether he observed Yager's vehicle commit a traffic violation.

should find Trooper Morrow's testimony incredible and completely disregard it. The Court should reject Yager's argument.

First, as reflected above, Trooper Morrow has testified consistently that he observed Yager's failure to signal and that that was the basis for the traffic stop. Trooper Morrow's testimony underscored that he had a good opportunity to observe Yager's vehicle that morning. Indeed, he testified that he followed the car for nearly six miles before he saw the car make the right turn onto State Route 5 without using a turn signal. At that point, it was abundantly reasonable for Trooper Morrow to believe that the vehicle's operator had committed a traffic violation and to stop the vehicle to further investigate. Moreover, while the citation may contain an erroneous statute number, the notations "No Directional," and "R turn" indicate the reason for the stop. The citation corroborates, rather than undermines, Trooper Morrow's testimony. As a result of his observation of the traffic violation, Trooper Morrow could and did lawfully seize the vehicle and approach it to conduct additional investigation. *See Whren*, 517 U.S. at 809-10.

Trooper Morrow has now testified consistently about what he observed and the basis for the traffic stop that occurred of September 25, 1994 on three occasions in this Court. It is also of some note that the additional details that Trooper Morrow provided at the evidentiary hearing last month, including the precise location of where the stop occurred after following it eastbound on State Route 20, were not developed at the two trials because no defendant had challenged the stop of the vehicle, despite their opportunity and standing to do so. At the prior to trials of Yager's co-defendants,

13

Trooper Morrow was testifying simply as a foundation witness for the receipt of the mutilated, bloodied Hells Angels vest.

There is also no merit in Yager's argument that a driver turning right onto Route 5 from Route 20 is not required to give a signal because this is not an "intersection." (Def.'s Br. at 8.) First, as Trooper Morrow has clearly and consistently testified, this was a controlled intersection with traffic signals and not simply a fork in the road. Hrg. Tr. at 21-22; Trial Tr. 5598. Second, the photographic exhibits received at the hearing confirm this fact. *See* Hrg. Exhs. 2-5. The photographs show Route 20, a highway with two eastbound lanes and two westbound lanes, intersecting with Route 5, a highway with a single eastbound lane and a single westbound lane. It is disingenuous to argue that the intersection of State Route 20 and State Route 5 is not an "intersection" or "an area within which vehicles traveling upon different highways . . . . may come in conflict," given that the State of New York has deemed it sufficiently dangerous to erect traffic lights at the intersection. New York Vehicle & Traffic Law § 120(a). Simply put, this argument has no support in the record.

As to the validity of the traffic ticket itself, the relevant question is not whether Yager did, in fact, commit a New York traffic law violation when he turned right onto Route 5: "[T]he question is simply whether a law enforcement officer has sufficient cause to believe that a traffic law has been violated, not whether such violation can be successfully prosecuted in court." *United States v. Monzon-Gomez*, 244 F. App'x 954, 959 n.3 (11th Cir. 2007). Mere suspicion is not enough, but "probable cause 'need not be based on evidence sufficient to support a conviction, nor even a showing that the

14

officer's belief is more likely true than false.'" *Schaafsma*, 318 F.3d at 722 (citations omitted) (quoting *United States v. Burrell*, 963 F.2d 976, 986 (7th Cir.1992)). In other words, no actual showing of an illegal turn is necessary; probable cause requires only "a substantial chance of criminal activity." *Schaafsma*, 318 F.3d at 722. Because Trooper Morrow's testimony is clear that he observed Yager's vehicle turn right onto State Route 5 from the left lane of State Route 20 without signaling, he had sufficient cause to believe that the vehicle's operator was violating a traffic law, or that there was a substantial chance that it was violating a traffic law. As a result, Trooper Morrow acted reasonably by stopping and approaching the vehicle to conduct further investigation.

## CONCLUSION

For all of the foregoing reasons, the government respectfully requests that the Court deny the defendant Yager's motion to suppress.

Respectfully submitted this 28th day of January, 2016.

GREGORY J. HAANSTAD
Acting United States Attorney

By:     *s/ Carol L. Kraft*
        Carol L. Kraft WBN 1000117
        Scott J. Campbell WBN 1017721
        Laura S. Kwaterski WBN 1055485
        Assistant United States Attorneys
        Office of the United States Attorney
        Eastern District of Wisconsin
        517 East Wisconsin Avenue, Room 530
        Milwaukee, Wisconsin 53202
        Telephone: (414) 297-1700

15