UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

|  |  |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | Case No. 97-CR-98-JPS |
| v. | |
| RANDY M. YAGER, | |
| Defendant. | ORDER |

On May 30, 1997, a grand jury sitting in this district returned an indictment charging the defendant, Randy M. Yager ("Yager"), and sixteen co-defendants with violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO") (18 U.S.C. §§ 1962(c), 2) and conspiracy to commit RICO violations (18 U.S.C. §§ 1962(d), 2). (*See generally* Docket #1). After absconding for over seventeen years as a fugitive, Yager was arrested in Baja, Mexico, on October 26, 2014. (Docket #2099 at 2).

Following his arrest, Yager was returned to Wisconsin and thereafter charged in a two-count superseding indictment for committing, and conspiring to commit, RICO violations. (*See* Docket #2101). One of the racketeering acts described in that superseding indictment relates to a murder that occurred during a speedway brawl in Lancaster, New York, on September 25, 1994. (Docket #2010 at 7-8). On April 24, 2015, Yager's appointed counsel moved to suppress evidence obtained during a traffic stop[1] that occurred shortly after the speedway fight. (Docket #2091). Since that time, Yager has retained private counsel. (Docket #2098).

---

[1] Yager was the driver of the vehicle subject to this traffic stop. (Docket #2099 at 4-5).

Upon initial review of the parties' written submissions with respect to the motion to suppress, the Court concluded that a dispute of fact existed regarding the question of whether Trooper John Morrow—the officer who observed and cited Yager for the purported traffic violation—had probable cause to stop Yager's vehicle. (Docket #2118 at 3-4). Thus, on December 23, 2015, the Court held an evidentiary hearing on this issue. (Docket #2119). Following the hearing, the Court gave the parties the opportunity to further brief their positions in light of the testimony given by Trooper Morrow. (Docket #2122, #2124, #2125).

The motion to suppress is now fully briefed and ripe for adjudication. For the reasons stated below, the Court finds that Trooper Morrow's traffic stop of Yager's vehicle on September 25, 1994, was supported by probable cause and, accordingly, Yager's motion will be denied. (Docket #2091).

1. BACKGROUND

On September 25, 1994, a violent fight broke out between two rival motorcycle gangs, the Outlaws Motorcycle Club and the Hell's Angels, at the Lancaster National Speedway which is located in Lancaster, New York. (Docket #2099 at 2-3). Shortly thereafter, Trooper Morrow conducted a traffic stop in the Village of Silver Creek, New York. (Docket #2091 ¶¶ 5-6). Upon viewing a can of mace in the front console, Trooper Morrow searched Yager's vehicle and found, among other things, a bloodied Hell's Angels vest. (Docket #2099 at 5-6). The blood on that vest was later confirmed to be that of Michael Quale, a Hell's Angels member who was killed during the Lancaster brawl. (Docket #2099 at 6).

Yager's motion to suppress arises out of this traffic stop and vehicle search in Silver Creek. (*See generally* Docket #2091). First, Yager argued that Trooper Morrow's traffic stop violated the Fourth Amendment because it was not supported by probable cause. (Docket #2091 at 5-7). Trooper Morrow's purported basis[2] for the traffic stop was Yager's failure to signal when turning right from westbound State Route 20 (which, in certain stretches of road, is also known as Central Avenue) onto State Route 5 (which is also known as Howard Street in Silver Creek). (Docket #2099 at 4-5). For his part, however, Yager argued that certain testimony given by Timothy Haevern—an officer who provided back-up to Trooper Morrow during the stop—suggested that Yager did *not* turn right from State Route 20 onto State Route 5, as Trooper Morrow indicated. (Docket #2091 at 6). According to this theory, if Yager never turned right onto State Route 5, and instead continued westbound on State Route 20, Yager would have never needed to use his turn signal, thereby undermining the government's probable cause theory. (Docket #2091 at 6). Alternatively, Yager argued that even if he turned from State Route 20 onto State Route 5, he was not required to use a turn signal because the turn in question was not made at an "intersection" as defined by New York law. (Docket #2125 at 4-5). Second, Yager argued that Trooper Morrow's search of the car was unconstitutional under the Fourth Amendment because it did not meet any exception to the warrant requirement. (Docket #2091 at 7).

---

[2] In support of this position, the Government initially relied on certain testimony given by Trooper Morrow during the trial of Yager's co-defendants. (Docket #2099 at 2).

The government, relying on Trooper Morrow's prior testimony, responded that Yager's motion should be denied in its entirety without an evidentiary hearing. (*See generally* Docket #2099).

On November 2, 2015, the Court concluded that, in light of the dispute of fact with respect to the traffic stop, an evidentiary hearing was necessary to decide whether Trooper Morrow indeed had probable cause to stop Yager's vehicle on September 25, 1994. (Docket #2118 at 3-4). Conversely, the Court found that no evidentiary hearing was necessary with respect to Trooper Morrow's search of the car, as the circumstances of the stop and search satisfied the automobile exception to the warrant requirement. (Docket #2124 at 4-6).

The evidentiary hearing took place on December 23, 2015. (Docket #2111). The government called Trooper Morrow to testify. (Docket #2111). Yager called no additional witnesses. (Docket #2111).

2. FACTS[3]

Following the speedway brawl in Lancaster, radio transmissions describing the brutal melee were broadcast to area police. (Docket #2091 ¶ 1; Docket #2121 at 8-9). The transmissions stated that many participants were leaving the speedway, and that officers should pay special attention to potential witnesses departing the area, especially those in cars bearing out-of-state, Midwestern license plates. (Docket #2091 ¶ 2; Docket #2121 at 9-10).

---

[3]Unless otherwise indicated, the testimonial record referenced herein will be that which was made at the December 23, 2015 evidentiary hearing. (*See* Docket #2121).

Trooper Morrow—who served as a New York State Trooper from 1986 until 2012—was on duty the morning of September 25, 1994, in the town of Brant, New York. (Docket #2091 ¶ 3; Docket #2121 at 9-10). Brant is approximately forty-five to fifty miles southwest of the Lancaster National Speedway. (Docket #2092 ¶ 2; Docket #2121 at 8-9). After he heard the radio transmissions about the speedway incident, Trooper Morrow parked on State Route 20 because he thought that if someone driving away from the speedway "did not want to be seen by law enforcement, they might not stay on a controlled access highway…." (Docket #2121 at 10). Trooper Morrow admits that he was actively trying to obtain "further information from Lancaster" about the scene and potential suspects during this time. (Docket #2121 at 43).

About an hour later, Trooper Morrow noticed a 1975 Oldsmobile with a rear, Illinois dealer plate traveling westbound. (Docket #2091 ¶ 3; Docket #2121 at 10-11). This vehicle was distinctive because it did not have a "front license plate." (Docket #2121 at 10) (describing how New York law requires both front and back plates). In addition, it was unusual for such an old car to display only "dealer plates," which were subject to numerous restrictions in New York. (Docket #2121 at 10). Trooper Morrow decided to follow the vehicle, during which time he: (1) continued to try and contact the Lancaster police about potential speedway suspects; and (2) gather information about the Illinois dealer plates. (Docket #2121 at 12).



Figure 1: Map of the Village of Silver Creek, New York[4]

While traveling westbound near the Village of Silver Creek, the car began to approach the Y-shaped intersection of State Route 20 and State Route 5, which—both in 1994 and today—has a traffic control light. *See*

---

[4]The Google map featured above (*see* Figure 1) is, in all material respects, the same representation of Silver Creek, New York, as was relied upon by the parties during the evidentiary hearing. (*See* Evid. Hr. Ex. 1).

Page 6 of 15

Figure 1; (Docket #2121 at 11; Evid. Hr. Exs. 2-5).[5] Trooper Morrow testified that he observed the car turn right onto State Route 5 from State Route 20's leftmost, westbound lane without a directional signal, which Trooper Morrow perceived to be a violation of New York state traffic law. (Docket #2121 at 22-23).

After observing this traffic infraction, Trooper Morrow decided to call for back-up while continuing to follow the Oldsmobile, which was traveling on State Route 5. (Docket #2121 at 24, Evid. Hr. Ex. 1). Approximately 1.5 miles later, at the T-intersection of Central Avenue and State Route 20 in the Village of Silver Creek, the car turned left using its directional signal. *See* Figure 1; (Docket #2121 at 25-27, Evid. Hr. Ex. 1). This turn placed Yager back onto State Route 20, heading eastbound. *See* Figure 1; (Docket #2121 at 27; Evid. Hr. Ex. 1). While proceeding eastbound on State Route 20, and after receiving confirmation that back-up was on its way, Trooper Morrow activated his emergency lights and pulled the car over. (Docket #2121 at 30-31). Trooper Morrow testified that he had waited to stop the vehicle until arriving at that location because he wanted to first: (1) confirm that back-up was on the way; and (2) clear a steep hill and an elbow turn. *See* Figure 1; (Docket #2121 at 30-31). Yager pulled over to the right-hand side of the road

---

[5]Trooper Morrow testified that, at all times relevant, State Route 20 has been a four-lane highway, with two eastbound lanes and two westbound lanes. (Docket #2121 at 13; Evid. Hr. Exs. 2-5). In addition, at the point at which State Route 20 and State Route 5 meet, one of State Route 20's westbound lanes continues straight (onto Central Avenue), while the other State Route 20 westbound lane veers right onto State Route 5 (which is also known as Howard Street). (Docket #2121 at 13; Evid. Hr. Exs. 2-5). Today, State Route 20 has painted, white lines to distinguish which westbound lane continues straight and which westbound lane veers right. (*See* Evid. Hr. Ex. 4). Trooper Morrow was unable to testify as to whether these white lanes were painted on the road in 1994. (Docket #2121 at 21).

into an unoccupied parking lot adjacent to State Route 20's eastbound lane. (Docket #2121 at 31-32).

Once the vehicle stopped in the parking lot, Trooper Morrow identified Yager as the driver and four passengers. (Docket #2121 at 34-36). Trooper Morrow also spotted a can of mace[6] and confirmed that the occupants were coming from the Lancaster National Speedway. (Docket #2121 at 58; #2099 at 4-5). In light of these facts, Trooper Morrow removed Yager and the other occupants from the vehicle and began a search for contraband. (Docket #2099 at 5). This search recovered a stained Hell's Angels vest, which was later discovered to have blood strains from a man who was killed during the speedway fight. (Docket #2099 at 5). Trooper Morrow issued Yager ticket number TW6411451.[7]

2.   LEGAL STANDARD

The Fourth Amendment protects citizens against unreasonable searches and seizures. U.S. CONST. amend. IV. "The law is settled that in Fourth Amendment terms a traffic stop entails a seizure of the driver 'even though the purpose of the stop is limited and the resulting detention quite brief.'" *Brendlin v. California*, 551 U.S. 249, 255 (2007) (citing *Delaware v. Prouse*, 440 U.S. 648, 653 (1979)); *see also Whren v. United States*, 517 U.S. 806, 809–10 (1996). "Under the fourth amendment, every search or seizure must

---

[6]Chemical mace was illegal to possess at this time. *See* Self Defense Spray Devices—Regulation of Possession, Sale and Use, 1996 Sess. Law News of N.Y. Ch. 354 (S. 1728–A) (McKinney's).

[7]The content and interpretation of this ticket are disputed by the parties and will be discussed in further detail below. (*See infra*, Part 3).

be 'reasonable.…'" *United States v. Childs*, 277 F.3d 947, 950 (7th Cir. 2002) (citing *Indianapolis v. Edmond*, 531 U.S. 32, 37 (2000)).

"[T]he decision to stop an automobile is reasonable when the police have probable cause to believe that a traffic violation has occurred." *United States v. Muriel*, 418 F.3d 720, 724 (7th Cir. 2005) (citing *Whren*, 517 U.S. at 810). "Probable cause requires only a substantial chance of criminal activity, not an actual showing of such activity." *United States v. Schaafsma*, 318 F.3d 718, 722 (7th Cir. 2003) (citing *Illinois v. Gates*, 462 U.S. 213, 244 n.13 (1983)). "An officer has probable cause for a traffic stop when he has an objectively reasonable basis to believe a traffic law has been violated." *United States v. Hernandez-Rivas*, 513 F.3d 753, 758-59 (7th Cir. 2008). "As long as the officers ha[ve] probable cause to [make the traffic] stop…their subjective motives are irrelevant." *United States v. Moore*, 375 F.3d 580, 584 n.1 (7th Cir. 2004) (citing *Whren*, 517 U.S. at 813).

3.  ANALYSIS

The sole issue that remains to be decided with respect to the pending motion to suppress is whether Trooper Morrow's traffic stop of Yager's vehicle in Silver Creek was supported by probable cause. (Docket #2118 at 3-4). On the one hand, Yager argues that the stop was pre-textual. (Docket #2122 at 8). He argues that the traffic citation—the only contemporaneous writing evidencing the stop—and Trooper Morrow's purportedly conflicting testimony suggest that the traffic stop was not supported by probable cause. (*See generally* Docket #2122). On the other hand, the government argues that Trooper Morrow consistently and logically explained that the stop was made because Yager failed to signal when turning right from westbound State Route 20 onto State Route 5. (Docket #2124 at 11-13). Under this view,

Yager's failure to signal constituted a traffic offense which thereby supplied probable cause to stop the vehicle. (Docket #2124 at 11-12).

The Court concludes that Trooper Morrow had an "objectively reasonable basis," *i.e.*, probable cause, to believe that Yager committed a traffic infraction on September 25, 1994, which thereby enabled him to lawfully detain Yager's vehicle. *Hernandez-Rivas*, 513 F.3d at 758-59.

Despite the passage of time, Trooper Morrow's testimony throughout the years has not changed. (*Compare* Evid. Hr. Ex. 21 at 1829 *with* Docket #2121 at 22). In both 2000 and 2015, Trooper Morrow explained that he made the traffic stop in question because Yager *failed to signal as he turned* right onto State Route 5 from State Route 20.[8] (*See* Evid. Hr. Ex. 21 at 1829; Docket #2121 at 22).

Specifically, in 2015, Trooper Morrow responded unequivocally to the line of questioning on this point:

> Q. Now, I'd like to talk about your ticket. And, Trooper, you may resume the stand. What did you issue this ticket for, bottom line?
>
> A. *Failed to used a turn signal to make a turn.*
>
> Q. Is there a New York law that requires people in that situation you described already to use a turn signal?
>
> A. Yes.

---

[8]Yager adds in his reply brief that Trooper Morrow's purported basis for the stop was Yager's failure to signal as he *changed lanes* on State Route 20. (*See* Docket at #2125 at 3). Though, at the evidentiary hearing, Trooper Morrow indeed noted that Yager made the right-hand turn from State Route 20 onto State Route 5 from the leftmost westbound lane (Docket #2121 at 2-3), he repeatedly stated that he *observed and cited* Yager for failing to use a directional turn signal. (*See* Docket #2121 at 22-24, 37, 41, 50, 66, 67-68).

(Docket #2121 at 67) (emphasis added). And, in 2000, Trooper Morrow likewise explained,

> That [ticket] was for not using [a] directional—the Route 20 at that…point is a four lane road. *It splits off as a truck route to the right at a signal light.* [Yager] *did not use his turn signal to make the turn.* That's what I wrote the ticket for.

(Evid. Hr. Ex. 21 at 1827-28) (emphasis added).

That Trooper Morrow might have harbored some subjective intention to interview witnesses is of no constitutional moment, *see Moore*, 375 F.3d at 584 n.1, so long as he had an "objectively reasonable basis to believe" that Yager failed to use a directional when required to do so by law. *Hernandez-Rivas*, 513 F.3d at 758-59. This failure to signal when turning onto State Route 5 is, in fact, exactly what Trooper Morrow observed on September 24, 1995. (*See* Docket #2121 at 22-24, 37, 41, 50, 66, 67-68; Evid. Hr. Ex. 21 at 1827-28).

Yager attempts to cast doubt on Trooper Morrow's testimony by pointing to seemingly disjointed statements that Trooper Morrow made in 2000. (*See* Docket #2122 at 7-8; Evid. Hr. Ex. 21 at 1825). When explaining the events of September 25, 1994, Trooper Morrow related that:

> As I was following the vehicle westbound on state Route 20 and seen the infraction, called for backup. They told me they were on route. The vehicle, he intended–I don't know if he intended to or not, but he was traveling westbound on 20. He missed the turn *and continued westbound on 20.* So I activated my emergency light to pull him over.

(Evid. Hr. Ex. 21 at 1825) (emphasis added). Yager argues that this quoted passage suggests that Trooper Morrow did *not* observe Yager turn right onto State Route 5 from State Route 20 because, instead, Yager "*continued westbound* on 20." (Docket #2122 at 1825) (emphasis added).

The flaw in this argument is that Yager fails to appreciate that Trooper Morrow's testimony (quoted above) was not made in reference to the Y-shaped intersection of State Route 5 and State Route 20. *See* Figure 1. Rather, Trooper Morrow's testimony with regard to "continu[ing] westbound" was made in reference to an entirely *different* intersection, namely the one in which State Road 20 meets Central Avenue at a perpendicular angle in Silver Creek. *See* Figure 1. Trooper Morrow clarified this error, and the internal consistency that it created, at the evidentiary hearing. (Docket #2121 at 63-64).

Trooper Morrow explained that the 2000 trial transcript should state that Yager "missed the turn *to continue* westbound on 20." (Docket #2121 at 64). Keeping that correction in mind, the sequence of events in Trooper Morrow's account falls into place. (*See* Docket #2121 at 22-31) (explaining that Yager: (1) failed to signal when turning right from westbound State Route 20 onto State Route 5; (2) continued driving on State Route 5 into the Village of Silver Creek; (3) turned left at the intersection of State Route 5 and Central Avenue; (4) failed to turn right to continue onto westbound State Route 20; and (5) pulled over into a parking lot located just off of eastbound Central Avenue after Trooper Morrow activated his emergency lights). Trooper Morrow's explanation of this transcript error makes the 2000 trial transcript internally consistent with Trooper Morrow's claim that he pulled Yager over for failing to use his directional signal when turning at the Y-shaped intersection of State Route 20 and State Route 5. (*See* Evid. Hr. Ex. 21 at 1825-1828). It also sheds light on why Yager's vehicle was stopped while proceeding eastbound, instead of westbound, on Central Avenue. *See* Figure 1; (Docket #2121 at 33). Though not immediately apparent, the conclusion

that Trooper Morrow's 2000 trial testimony was transcribed in error is certainly fathomable given the small nature of the change.

Moreover, the citation that Trooper Morrow issued to Yager on September 25, 1994, does not undermine the Court's conclusion that Yager's failure to signal a turn supported the traffic stop in question. It is true, as Yager argues, that Yager's ticket cites a violation of N.Y. Vehicle and Traffic Law § 375.18, which prohibits operating a vehicle that is not "equipped with direction signals." *Compare* N.Y. VEH. & TRAF. LAW § 1163 (McKinney) (failure to signal) *with* N.Y. VEHICLE & TRAFFIC LAW § 375.18 (McKinney) (faulty equipment). Trooper Morrow admitted that, in retrospect, this may have been the incorrect statute number. (Docket #2121 at 51, 67). However, the citation clearly states the ticket was being written for Yager's failure to use a turn signal. (*See* Evid. Hr. Ex. 35) (stating in capital letters "NO DIRECTIONAL"); (*see also* Docket #2121 at 37) (explaining the statute error).

Similarly, Yager's attempt to cast doubt on the directional citation by arguing that the ticket somehow references a "U-turn" makes much ado about nothing. (*See* Evid. Hr. Ex. 35; Docket #2122 at 5-6). Trooper Morrow explained at the evidentiary hearing that the small notation on the citation, which may in certain respect looks like it states "U-turn," was intended to read, "R-turn," in reference to the *right turn* that Yager failed to signal at the Y-shaped intersection of State Route 20 and State Route 5 Silver Creek. *See* Figure 1; (Docket #2121 at 53-54). This account falls consistently in line with Trooper Morrow's prior testimony, both in 2000 and 2015, and explains why Yager was detained just off of eastbound State Route 20 in Silver Creek.

Finally, the Court rejects the argument that Yager was not required to signal at the intersection of State Route 20 and State Route 5 because that area

Page 13 of 15

Case 2:97-cr-00098-JPS   Filed 02/11/16   Page 13 of 15   Document 2126

does not constitute an "intersection" for the purpose of New York traffic law. (Docket #2122 at 8-9).

An "intersection" in New York is defined as:

The area embraced within the prolongation or connection of the lateral curb lines, or, if none, then the lateral boundary lines of the roadways of two highways which join one another at, or approximately at, right angles, *or the area within which vehicles traveling upon different highways joining at any other angle may come in conflict.*

N.Y. VEHICLE & TRAFFIC LAW § 120 (a) (emphasis added). Even if State Route 20 and State Route 5 do/did not join at an exact right angle, the area in question surely is one in "which vehicles traveling upon different highways joining at any other angle may come in conflict." (*See* Evid. Hr. Exs. 2-5). This is because traffic proceeds in both directions on State Route 20 and State Route 5. (*See* Evid. Hr. Exs. 2-5). And, even if the juncture of these two state highways does not meet the technical definition of an "intersection" under New York law, then Trooper Morrow's reasonable mistake of law does not render his stop unreasonable or violative of the Fourth Amendment. *See Heien v. N. Carolina*, —U.S.—,135 S. Ct. 530, 540 (2014).

At bottom, Trooper Morrow consistently testified that he witnessed Yager turn right from State Route 20 onto State Route 5, an "intersection" for purpose of New York traffic law. Yager's failure to signal at that intersection supported Trooper Morrrow's reasonable belief that Yager committed a minor traffic offense. As such, Trooper Morrow had probable cause to detain Yager's vehicle, and Yager's motion to suppress must be denied.

4. CONCLUSION

In sum, the Court concludes that Trooper Morrow had probable cause to conduct a traffic stop of Yager's vehicle in Silver Creek, New York, after

observing Yager turn right from State Route 20 to State Route 5 without using his directional signal.

Accordingly,

IT IS ORDERED that the defendant's motion to suppress (Docket #2091) be and the same is hereby DENIED; and

IT IS FURTHER ORDERED that, in preparation for the final pretrial conference scheduled for March 17, 2016, at 8:30 AM, and trial of this matter scheduled for April 4, 2016, at 8:30 AM, the Court will conduct a case management conference on Thursday, February 25, 2016, at 10:00 AM, in Courtroom 425, 517 E Wisconsin Ave., Milwaukee, Wisconsin, during which the Court will address the logistical considerations related to the trial, including jury selection, witnesses, exhibits, and jury instructions together with such matters as counsel may wish to address.

Dated at Milwaukee, Wisconsin, this 11th day of February, 2016.

BY THE COURT:

_____
J.P. Stadtmueller
U.S. District Judge