UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

UNITED STATES OF AMERICA,

        *Plaintiff*,

    *v.*                               Case No. 97 CR 98

RANDY YAGER,

        *Defendant*.

**MOTION TO PROHIBIT TESTIMONY AND EVIDENCE REGARDING PREDICATE ACTS 3 AND 7 OR, ALTERNATIVELY, TO ADJOURN THE TRIAL DATE TO PERMIT THE DEFENSE TO ADEQUATELY INVESTIGATE NEWLY REVEALED EVIDENCE**

Randy Yager, by counsel, respectfully moves this Court in the alternative, either to bar the admission of testimony and evidence relating to predicate acts 3 and 7 and to bar the testimony of David Wolf, or to adjourn the presently scheduled trial in order to permit trial counsel to adequately investigate newly revealed exculpatory evidence that shows others, not previously disclosed, to have been involved in criminal acts (homicide at Lancaster Speedway), and not the accused.

For this motion Randy Yager relies on the rights secured by the Fifth and Sixth Amendments to the United States Constitution.

                                                                    HURLEY, BURISH & STANTON, S.C.

In support of this motion, Randy Yager shows the following:

1. When, on February 19, 2016, the defense traveled to view the physical evidence accumulated by the government in this case, it discovered reports of witness interviews conducted by the Bureau of Alcohol, Tobacco and Firearms that had not previously been provided to the defense. Unlike other documents that were made available, these reports were not numbered; at the time the documents bore no Bates stamp. Defense counsel requested that copies be provided; and on March 1 and March 3 copies, now marked Lancaster 789-811 and 1666-1672, were provided.

2. One document, Bates 789-804 is a memorandum authored by Assistant District Attorney Thomas Franczyk. It is addressed to District Attorney Kevin M. Dillon and is entitled "Interview with David Wolf Regarding Lancaster Speedway Shooting/Stabbing Incident Between Outlaws and Hells Angels on September 25, 1994." The memorandum is dated June 21, 1996 and Assistant United States Attorney Paul Kanter and agent DeValkanaere were present. This incident addressed is predicate act 3 of the Second Superseding Indictment.

3. Two other documents, Bates 807-808 and 809-811 are reports containing statements made by two informants, aptly named Source 1 & Source 2. Source 1 gave information on December 8, 2005, and Source 2 gave information on May 30,

2008. The documents given the defense were not dated. They also provide information about predicate act 3.

4. Prior to receiving these documents, the discovery material which had been given to the defense suggested that Donald Fogg, deceased and a former member of the Outlaws motorcycle club's Gary Indiana chapter, was probably the individual who killed Michael Quale, a member of the Hells Angels motorcycle club at the Lancaster Speedway.[1] *See* Dkt. 2101, ¶ 11 (Second Superceding Indictment).

    A. Briefly, the discovery materials show that Mr. Fogg drove to Lancaster with Randy Yager and others; then, after the melee broke loose, Mr. Fogg returned to the automobile Mr. Yager was driving with Mr. Quale's leather jacket which had Mr. Quale's blood on it. It was found hidden beneath Mr. Fogg's seat in the car.

    B. The discovery documents and photographs also suggest that a Bowie knife and folding knife (the former found in a trash container at the Speedway and the latter on Genessee Road) each had Mr. Quale's blood on it. A partial latent print was found on the folding knife, but the defense has been provided with no report that identifies to whom the partial print belongs.

---

[1] The government provided defense counsel with document pursuant to an "open file" policy as that is defined by Local Rule 16. Under the policy, the government is required to provide defense counsel with all exculpatory material. *See* L.R. 16(a)(2).

C. The discovery materials contain interviews of Michelle Sandefur, Mr. Fogg's girlfriend and of questionable credibility, and of Mr. Fogg's mother and stepfather each of whom said that Mr. Fogg made statements implying that he killed Mr. Quale.

D. Previously provided discovery documents identified a witness, Kathy Hoy, as having observed someone drop something in the trash container at the Speedway – the same one in which the Bowie knife was subsequently found. Ms Hoy was said to have identified Donald Fogg as that person from having viewed a photograph of him.

E. Additionally, the discovery materials reveal that informants/witnesses Wolf, Warneke, Quinn and Talmadge—all of questionable credibility—claim that they either heard that Mr. Fogg had killed Mr. Quale or that Fogg told them he had.

F. The report of Mr. Franczyk's interview with Mr. Wolf reveals to the defense for the first time that Mr. Wolf claims that "he saw Don Fogg, R.V. Powers [who had also traveled to Lancaster with Mr. Yager] and Mad Yeager [sic] beating on an Angel (presum[e]ably Quale) … . Wolf saw them pull his shirt over his head with his arms extended and there was blood on the shirt. He did not specifically see any of them stabbing this person … ."

G. Too, Ms. Sandefur claimed that Mr. Fogg told her that Louis Luna, another member of the Gary Chapter who had traveled to Lancaster with Mr. Yager, had stabbed a Hells Angel while Fogg held him; that he, Fogg, had stabbed the Hells Angel 18 times[2]; and that on the way back from Lancaster, he threw the knife out of the automobile window somewhere near the airport. The discovery materials establish that a knife was found near Genessee Road near the airport. That road is on one of the possible routes out of Lancaster toward Gary, Indiana.

5. Based on the foregoing, the defense anticipates that the prosecution will suggest to the jury that Mr. Fogg was the killer of Mr. Quale.

6. This is of import for two reasons. First, with respect to predicate act 3, the notion that Mr. Yager drove Mr. Fogg to and from Lancaster, and that Mr. Quale's leather jacket was in the automobile strongly supports the government's accusation against Mr. Yager. Second, with respect to predicate act 7, which alleges the homicide of Donald Fogg, the defense anticipates that the prosecution will elicit testimony from witnesses that will suggest to the jury that Mr. Fogg was killed at Mr. Yager's direction by Louis Luna, for one or all of several reasons linked to the death of Mr. Quale: because he was talking to people—perhaps even federal law enforcement agents—about how he killed Mr. Quale and/or that he was killed by

---

[2] The coroner's report establishes seven stab wounds on Mr. Quale.

his own Outlaw organization as a sacrifice to make up for the killing of Quale so that the Outlaws could make peace with the Hells Angels. *See* Dkt. 2101, ¶ 15 (Second Superceding Indictment). Ms. Sandefur's claim that Fogg said that Luna stabbed Quale while Fogg held Quale would suggest a motive for Mr. Luna to have killed Mr. Quale if he had been talking about such an event. Witness/informant Wayne Hicks – expected to testify for the government in this case --, testified at the trial of Harry "Taco" Bowman[3] and quoted Mr. Bowman as having intimated, subsequent to the Lancaster occurrence and prior to Fogg's death, that an Outlaw snitch from the Chicago, Indiana and Wisconsin region would be killed; that there would be an Outlaw funeral. Mr. Hicks credibility will be in question.

7.  The recently received reports, however, tell a very different story. Source 1 and Source 2 claim to have been present when Mr. Quale was stabbed to death. The witnesses report that Mr. Quale was stabbed by three individuals: Ronnie Lozon (*a/k/a* "Gypsy"), George Terek and Cameron Ross, all of whom are members of the Outlaw Motorcycle Club in Detroit. Donald Fogg is not observed stabbing Mr. Quale. Moreover, one of the Sources watched Lozon stab Mr. Quale

---

[3] The national president of the Outlaws, successfully prosecuted in the context of a RICO case for having been responsible for Mr. Fogg's demise. *See United States v. Bowman*, 97 CR 333, U.S. District Court for the Middle District of Florida, Testimony of Wayne Hicks at 124-5.

with a specific weapon: a Bowie knife. The Sources say that Lozon is known to carry a Bowie knife.

8. The new discovery materials also reveal that these new suspects were pulled over near Genesee Road (when about 15 motorcyclists were stopped), which is near the airport where one of the knives was found. Cameron Ross was identified as being with this group.[4] Mr. Ross subsequently told Source 2 "that he threw the knife he used to stab Quale onto the ground when they were stopped at the police roadblock." If this is true, then the knives found with Quale's blood are most probably that of Ronny Lozon and Cameron Ross.

9. With this information, the evidence connecting Mr. Yager to the murder of Mr. Quale through Fogg is undercut.

10. Absent these interviews, the defense could not have known that other individuals were identified by witnesses as having killed Mr. Quale. The new information significantly affects defense counsel's preparation for trial: the new evidence will require investigation, it will alter the theory of defense requiring the attendance of new witnesses. And the questions defense counsel would ask of witnesses called by the government at trial will be different. It will, for example and

---

[4] "Lead Logs" from a law enforcement agency previously given the defense had revealed this stop and the names of those stopped; and other reports revealed that the folding knife with Quale's blood was found near where that had occurred. But they never revealed any connection, other than proximity, between the knife and any of the 15.

assuming that the witnesses can now be located, permit the defense to impeach Mr. Wolf's statements implicating Mr. Yeager in the Lancaster incident and in all the other incidents about which it is expected Mr. Wolf will give testimony against him. The information tying three other members of the Outlaw organization to the Lancaster murder was not contained in the thousands of pages of discovery previously provided to defense counsel by the government.

11. The whereabouts of Source 1 and Source 2 are unknown to defense counsel.[5] And the availability of other witnesses (*e.g.*, Mr. Franczyk, Mr. Ross, Mr. Terek, and Mr. Lozon) will take considerable time and effort to determine.[6] It would deny Mr. Yager a fair trial to force him to trial without a fair opportunity to investigate this new evidence. Ineffective assistance of counsel can result from the

---

[5] On March 3, 2016, the government identified the unnamed sources. Both are former members of the Outlaw Motorcycle Association. The defense asked the government whether the two Sources were in the witness protection program and, if not, for their contact information. The government, on March 14, 2016 replied that its agent would serve defense subpoenas on them, that they have agreed to accept service, but that neither is willing to speak to defense counsel. The government has not provided the defense with their address or any other way to reach these witnesses. As of this date, the government has not revealed whether it knows the whereabouts of other witnesses referenced in the reports; nor has the defense, due to the press of preparation for the upcoming trial, had time to investigate the same.

[6] The new discovery materials also report that Cameron Ross died. Counsel has not yet been able to verify this information. Discovery materials previously provided the defense revealed that on Feb. 6, 1997 witness/informant Houston Murphy – expected to testify in this trial – believed that Harry Bowman had Cameron Ross poisoned and that when he learned of Cameron's death, he called Wayne Hicks who said "Oh, Taco got him." This provides an alternate explanation for Mr. Hicks claim, in the trial of Mr. Bowman, that Bowman was referring to Fogg, assuming, of course, that one can believe that Mr. Bowman made such a remark. However, defense counsel could not have perceived that alternate explanation without the recently revealed reports connecting Ross with the death of Quale.

failure to interview pertinent witnesses. *Mosley v. Butler,* 762 F.3d 579, 588 (7th Cir. 2014).

12. While the documents themselves do not reveal when they came into the government's possession, documents reviewed by defense counsel that were located with these documents suggest that they have been in the possession of the government for years, though they were not likely provided as discovery in any earlier case.

13. Federal courts recognize that late discovery of exculpatory evidence can be a denial of the right to a fair trial. *See United States v. Sweeney*, 688 F.2d 1131 (7th Cir. 1982), citing *United States v. McPartlin*, 595 F.2d 1321 (7th Cir.), cert. denied, 444 U.S. 833 (1979). Given the amount of investigation that would have to be performed and little time remaining before trial—and the need to adequately prepare for trial—Randy Yager's right to due process and a fair trial is implicated.

14. Failure to pursue this exculpatory evidence would deny Randy Yager the reasonable opportunity to prepare to meet the charges against him in violation of his right to effective assistance of counsel. *See United States v. Quinn*, 537 F.Supp. 2d 99, 108 (D.D.C. 2008) ("the government must disclose *Brady* information 'at such time as to allow the defense to use the favorable material effectively in the

preparation and prosecution of the case, even if this criterion requires pretrial disclosure'").

15.     Mr. Yager remains incarcerated pending trial and has no desire to postpone the trial simply because the government did not reveal these reports to the defense in a timely manner.

16.     Counsel for the defense does not know why the government did not reveal this evidence long ago. The reason, however understandable it may turn out to be, though, is irrelevant. The evidence is of great import and given the little time there remains prior to trial, the accused's Due Process rights to a fair trial, to present a defense, to the effective assistance to counsel, to compel witnesses to testify and to confront and cross examine witnesses cannot be fulfilled if the trial goes forward as planned and the government is permitted to benefit from its lapse.

WHEREFORE, Mr. Yager respectfully requests that the prosecution be prohibited from eliciting testimony or proffering evidence concerning predicate Acts 3 and 7 and that it be barred from calling David Wolf as a witness. Alternatively the defense requests that the matter be set over for a new trial date until the defense has had an adequate opportunity to investigate the newly revealed evidence.

Dated this <u>14th</u> day of March, 2016.

-10-     HURLEY, BURISH & STANTON, S.C.

Case 2:97-cr-00098-JPS   Filed 03/15/16   Page 10 of 11   Document 2153

Respectfully submitted,

RANDY YAGER, *Defendant.*

 */s/ Stephen P. Hurley*
Stephen P. Hurley
*Wisconsin Bar No.* 1015654

HURLEY, BURISH & STANTON, S.C.
P.O. Box 1528
Madison Wisconsin 53701-1528
(608) 257-0945

F:\-clients\Yager Randy\Pleadings\Motion to prohibit production of testimony and evidence.wpd