UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

U<span>NITED</span> S<span>TATES OF</span> A<span>MERICA</span>,

   *Plaintiff*,

 *v.*          Case No. 97 CR 98

R<span>ANDY</span> Y<span>AGER</span>,

   *Defendant.*

**AFFIDAVIT OF STEPHEN HURLEY IN SUPPORT OF RANDY YAGER'S MOTION TO PROHIBIT TESTIMONY AND EVIDENCE REGARDING PREDICATE ACTS 3 AND 7 OR, ALTERNATIVELY, TO ADJOURN THE TRIAL DATE TO PERMIT THE DEFENSE TO ADEQUATELY INVESTIGATE NEWLY REVEALED EVIDENCE**

| | |
|---|---|
| STATE OF WISCONSIN | ) |
| | ) ss. |
| COUNTY OF DANE | ) |

 Stephen P. Hurley, being duly sworn, depose and state as follows:

 1. I represent Randy Yager and I make this affidavit in support of the Motion to Prohibit Testimony and Evidence Regarding Predicate Acts 3 and 7 Or, Alternatively, to Adjourn the Trial Date to Permit the Defense to Adequately Investigate Newly Revealed Evidence.

H<span>URLEY</span>, B<span>URISH</span> & S<span>TANTON</span>, S.C.

2. The government has been providing defense counsel with documents pursuant to an "open file" policy, as that is defined by Local Rule 16. Under the policy, the government is required to provide defense counsel with all exculpatory material.

3. On February 19, 2016, I viewed the physical evidence accumulated by the government in this case. I discovered reports of witness interviews conducted by the Bureau of Alcohol, Tobacco and Firearms that had not previously been provided to the defense. Unlike other documents that were made available, these reports were not numbered; at the time the documents bore no Bates stamp.

4. I requested that copies be provided; and on March 1 and March 3 copies, now marked Lancaster 789-811 and 1666-1672, were provided.

5. One document, Bates 789-804 is a memorandum authored by Assistant District Attorney Thomas Franczyk. It is addressed to District Attorney Kevin M. Dillon and is entitled "Interview with David Wolf Regarding Lancaster Speedway Shooting/Stabbing Incident Between Outlaws and Hells Angels on September 25, 1994." The memorandum is dated June 21, 1996 and Assistant United States Attorney Paul Kanter and agent DeValkanaere were present.

6. Two other documents, Bates 807-808 and 809-811 are reports containing statements made by two informants, aptly named Source 1 & Source 2. Source 1

gave information on December 8, 2005, and Source 2 gave information on May 30, 2008. The documents given the defense were not dated.

7. Prior to receiving these documents, the discovery material which had been given to the defense suggested that Donald Fogg, deceased and a former member of the Outlaws motorcycle club's Gary Indiana chapter, was probably the individual who killed Michael Quale, a member of the Hells Angels motorcycle club at the Lancaster Speedway.

    A. Briefly, the discovery materials show that Mr. Fogg drove to Lancaster with Randy Yager and others; then, after the melee broke loose, Mr. Fogg returned to the automobile Mr. Yager was driving with Mr. Quale's leather jacket which had Mr. Quale's blood on it. It was found hidden beneath Mr. Fogg's seat in the car.

    B. The discovery documents and photographs also suggest that a Bowie knife and folding knife (the former found in a trash container at the Speedway and the latter on Genessee Road) each had Mr. Quale's blood on it. A partial latent print was found on the folding knife, but the defense has been provided with no report that identifies to whom the partial print belongs.

    C. The discovery materials contain interviews of Michelle Sandefur, Mr. Fogg's girlfriend and of questionable credibility, and of Mr. Fogg's mother and

Case 2:97-cr-00098-JPS   Filed 03/15/16   Page 3 of 8   Document 2153-1

stepfather each of whom said that Mr. Fogg made statements implying that he killed Mr. Quale.

D. Previously provided discovery documents identified a witness, Kathy Hoy, as having observed someone drop something in the trash container at the Speedway – the same one in which the Bowie knife was subsequently found. Ms Hoy was said to have identified Donald Fogg as that person from having viewed a photograph of him.

E. Additionally, the discovery materials reveal that informants/witnesses Wolf, Warneke, Quinn and Talmadge—all of questionable credibility—claim that they either heard that Mr. Fogg had killed Mr. Quale or that Fogg told them he had.

F. The report of Mr. Franczyk's interview with Mr. Wolf reveals to the defense for the first time that Mr. Wolf claims that "he saw Don Fogg, R.V. Powers [who had also traveled to Lancaster with Mr. Yager] and Mad Yeager [sic] beating on an Angel (presum[e]ably Quale) … . Wolf saw them pull his shirt over his head with his arms extended and there was blood on the shirt. He did not specifically see any of them stabbing this person … ."

G. Too, Ms. Sandefur claimed that Mr. Fogg told her that Louis Luna, another member of the Gary Chapter who had traveled to Lancaster with Mr.

-4- <span style="font-variant: small-caps">Hurley, Burish & Stanton, s.c.</span>

Yager, had stabbed a Hells Angel while Fogg held him; that he, Fogg, had stabbed the Hells Angel 18 times (the coroner's report establishes seven stab wounds on Mr. Quale); and that on the way back from Lancaster, he threw the knife out of the automobile window somewhere near the airport. The discovery materials establish that a knife was found near Genessee Road near the airport. That road is on one of the possible routes out of Lancaster toward Gary, Indiana.

8. The recently received reports, however, tell a very different story.

   A. Source 1 and Source 2 claim to have been present when Mr. Quale was stabbed to death. The witnesses report that Mr. Quale was stabbed by three individuals: Ronnie Lozon (*a/k/a* "Gypsy"), George Terek and Cameron Ross, all of whom are members of the Outlaw Motorcycle Club in Detroit. Donald Fogg is not observed stabbing Mr. Quale. Moreover, one of the Sources watched Lozon stab Mr. Quale with a specific weapon: a Bowie knife. The Sources say that Lozon is known to carry a Bowie knife.

   B. The new discovery materials also reveal that these new suspects were pulled over near Genesee Road (when about 15 motorcyclists were stopped), which is near the airport where one of the knives was found. Cameron Ross was identified as being with this group.

   C. "Lead Logs" from a law enforcement agency previously given the

defense had revealed this stop and the names of those stopped; and other reports reveal that the folding knife with Quale's blood was found near where that had occurred. But they never revealed any connection, other than proximity, between the knife and any of the 15.

       D.     Mr. Ross subsequently told Source 2 "that he threw the knife he used to stab Quale onto the ground when they were stopped at the police roadblock." If this is true, then the knives found with Quale's blood are most probably that of Ronny Lozon and Cameron Ross.

       E.     The new discovery materials also report that Cameron Ross died. Counsel has not yet been able to verify this information. Discovery materials previously provided the defense revealed that on Feb. 6, 1997 witness/informant Houston Murphy – expected to testify in this trial – believed that Harry Bowman had Cameron Ross poisoned and that when he learned of Cameron's death, he called Wayne Hicks who said "Oh, Taco got him." This may provide an alternate explanation for Mr. Hicks claim, in the trial of Mr. Bowman, that Bowman was referring to Fogg, assuming of course that one can believe that Mr. Bowman made such a remark. However, I could not have perceived that alternate explanation without the recently revealed reports connecting Ross with the death of Quale.

       9.     The new information significantly affects my preparation for trial: the

new evidence will require investigation, it will alter the theory of defense requiring the attendance of new witnesses. And the questions I might ask of witnesses called by the government at trial will be different. It will, for example and assuming that the witnesses can now be located, permit the defense to impeach Mr. Wolf's statements implicating Mr. Yeager in the Lancaster incident and in all the other incidents about which it is expected Mr. Wolf will give testimony against him. The information tying three other members of the Outlaw organization to the Lancaster murder was not contained in the thousands of pages of discovery previously provided to defense counsel by the government.

10. The whereabouts of Source 1 and Source 2 are unknown to defense counsel. And the availability of other witnesses (*e.g.*, Mr. Franczyk, Mr. Ross, Mr. Terek, and Mr. Lozon) will take considerable time and effort to determine.

11. On March 3, 2016, the government identified the unnamed sources. Both are former members of the Outlaw Motorcycle Association. The defense asked the government whether the two Sources were in the witness protection program and, if not, for their contact information. The government, on March 14, 2016 replied that its agent would serve defense subpoenas on them, that they have agreed to accept service, but that neither is willing to speak to defense counsel. The government has not provided the defense with their address or any other way to

reach these witnesses. As of this date, the government has not revealed whether it knows the whereabouts of other witnesses referenced in the reports; nor has the defense, due to the press of preparation for the upcoming trial, had time to investigate the same.

_____
Stephen P. Hurley

Sworn to and subscribed before me
this <u>15th</u> day of March, 2016

/s/   Marcus J. Berghahn
My commission is permanent.

-8-					Hurley, Burish & Stanton, s.c.

Case 2:97-cr-00098-JPS   Filed 03/15/16   Page 8 of 8   Document 2153-1