UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

___

UNITED STATES OF AMERICA,

        Plaintiff,

v.                                  Case No. 97-CR-98

RANDY YAGER,

        Defendant.

___

## UNITED STATES' REPLY IN SUPPORT OF
## NOTICE OF INTENT TO OFFER OTHER ACTS EVIDENCE

___

The United States of America, by and through its attorneys, Gregory J. Haanstad, United States Attorney for the Eastern District of Wisconsin, and Carol L. Kraft, Scott J. Campbell, and Laura S. Kwaterski, Assistant United States Attorneys, hereby respectfully submits this reply in support of the United States' Notice of Intent to Offer Evidence Pursuant to Rule 404(b), Evidence of Defendant's Flight, and Evidence of Defendant's Prior Criminal Conviction Pursuant to Rule 609.

On February 23, 2106, the United States filed a Notice of Intent to Offer Evidence pursuant to Rule 404(b), Evidence of Defendant's Flight and Evidence of Defendant's Prior Criminal Conviction. On March 11, 2016, Defendant Randy Yager filed a Response to the Government's Notice of Intent to Offer Other Acts Evidence.

For the reasons set forth below, this Court should first, admit evidence that Yager had previously beaten and attempted to kill a member of a rival motorcycle club, the Invaders, and was convicted of battery in state court and racketeering in federal court based on that act, as evidence of Yager's motive and intent to commit the charged racketeering and racketeering conspiracy offenses, under Rule 404(b) of the Federal Rules of Evidence. Second, this Court should admit evidence of acts of intimidation and violence engaged in by members of the White Region of the Outlaws Motorcycle Club as evidence that is directly relevant to the charged racketeering enterprise and racketeering conspiracy. Third, this Court should admit evidence of Yager's flight and the fact that he provided a false name and false birth certificate at the time of his arrest as evidence of Yager's consciousness of guilt. Finally, this Court should allow the United States to introduce evidence of Yager's prior convictions for impeachment purposes under Rule 609 should Yager choose to testify. Thus, Yager's objections to the admission of the evidence referenced in the United States' notice should be overruled.

I.  **EVIDENCE OF YAGER'S PRIOR CONVICTION FOR BATTERY AND HIS ATTEMPT TO MURDER A MEMBER OF THE INVADERS MOTORCYCLE CLUB IS ADMISSIBLE TO ESTABLISH MOTIVE AND INTENT.**

The United States intends to introduce evidence that Yager previously engaged in, and was convicted of engaging in, an act of violence against a member of a rival motorcycle club, that is, the Invaders, a club that the United States will prove was affiliated with the Hells Angels Motorcycle Club. The United States intends to offer this evidence to prove that Yager had the motive and intent to engage in such acts of violence against members of rival motorcycle clubs.

2

Specifically, the United States will prove that on December 29, 1984, Yager, while a member of the Outlaws Motorcycle Club, beat Alex Thomas, a member of the Invaders Motorcycle Club's Gary Chapter, with a four-foot-long metal coat rack in a bar. On January 6, 1986, Mr. Yager was charged criminally with attempted murder in the Superior Court of Lake Count Indiana based on his December 29, 1984 beating of Invader Motorcycle Club member Alex Thomas. *See* Ex. 0-50. Pursuant to a written plea agreement, Yager pleaded guilty to the lesser offense of battery. Exs. 0-51, 0-52. On February 7, 1986, the Lake County, Indiana Superior Court sentenced Yager to five years imprisonment. Exs. 0-53, 0-54. At the February 7, 1986 sentencing proceeding, the Lake County, Indiana Superior Court Judge noted that Yager and victim Alex Thomas "were members of rival motorcycle clubs and that there were prior acts of violence between the two groups," which were the Outlaws Motorcycle Club and Invaders Motorcycle Club. Ex. 0-54. The Lake County Superior Court Judge also noted that the beating Yager had "inflicted on . . . victim [Alex Thomas] was particularly brutal, the injuries . . . inflicted were serious, even life-threatening, and there is evidence of $47,000 in medical bills incurred by the victim." *Id.*

On May 2, 1988, Mr. Yager was also charged federally, with racketeering, based on his December 29, 1984 beating of Invader Motorcycle Club member Alex Thomas in the United States District Court for the Northern District of Indiana in *United States v. Randy Yager*, Case No. S CR 88-27. In that case, Yager was charged with conducting and participating in the affairs of the Indiana Chapter of the Outlaws Motorcycle Club through a pattern of racketeering activity, which activity included Yager's attempt to

3

kill Alex Thomas on December 29, 1984. Ex. 0-55. On December 22, 1988, Yager agreed to plead guilty to that offense. Ex. 0-56. In a sentencing memorandum, Yager admitted that the victim Alex Thomas, was "a member of a rival motorcycle club [who had] entered[ed] [a] bar wearing the 'wrong' insignia." Ex. 0-57 at 4-5. On February 13, 1989, Yager was sentenced to six years imprisonment for that offense. Ex. 0-58.

The United States intends to present evidence at trial that the Invaders Motorcycle Club was a rival of the Outlaws Motorcycle Club and that the Invaders were also a motorcycle club that was affiliated with the Hells Angels. Thus, evidence that Yager committed an act of violence against a member of the Invaders Motorcycle Club, which is affiliated with the Hells Angels, is probative of the Yager's motive and intent to commit the conspiracy to commit murder alleged in predicate act #1 against the Invaders as well as probative of his motive and intent to engage in violence and intimidation against members of motorcycle clubs that are affiliated with the Hells Angels.

To be sure, evidence of a defendant's other bad acts, which is introduced only to show his propensity to commit crimes, is inadmissible under Rule 404(b). Fed. R. Evid. 404(b); *United States v. Harris*, 587 F.3d 861, 864 (7th Cir. 2009). Yet, "if that evidence is relevant because it serves another purpose, 'such as proving motive,' Fed. R. Evid. 402, 404(b), then it may be admitted so long as the district court satisfies that the other purpose is relevant through a "propensity-free chain of reasoning" at issue in the case, that the evidence is relevant to that issue, and that the probative value of the evidence is not substantially outweighed by the evidence's prejudicial effect." *United States v.*

4

*Schmitt*, 770 F.3d 524, 532-33 (7th Cir. 2014) *cert. denied*, 135 S. Ct. 1537 (2015) (quoting *United States v. Gomez*, 763 F.3d 845, 853 (7th Cir. 2014) (en banc); *see also United States v. Chapman*, 765 F.3d 720, 722 (7th Cir. 2014) (stating that other-act evidence "may be admitted for another purpose *provided* that the evidence is relevant under a theory that does not rely on an inference about the actor's propensity" (emphasis in original)).

The questions this Court must consider are "the 'legitimacy of the purpose for which the evidence is to be used and the need for it,'" as well as whether the proffered evidence is relevant to that permissible purpose—here, Yager's motive and intent. *Gomez*, 763 F.3d at 853 (quoting *Miller*, 673 F.3d at 692). This Court should also "look beyond the purposes for which the evidence is being offered and consider what inferences the jury is being asked to draw to determine whether the jury is essentially being asked to rely on the evidence as proof of the defendant's propensity to commit the charged offense or on some other logical and important connection between the other bad act evidence and the charged criminal conduct." *Schmitt*, 770 F.3d at 533 (7th Cir. 2014) (internal quotations omitted).

Here, the questions of motive and intent are relevant to: (1) the conspiracy to commit murder against members of the Invaders Motorcycle Club charged in predicate act #1, (2) the purposes and goals of the racketeering enterprise charged in Counts One and Two, and (3) the existence, purposes, and manner and means of the racketeering conspiracy charged in Count Two, which manner and means included using violence and intimidation against rival motorcycle clubs. And, looking to the interferences the jury will be asked to draw, the United States intends to use Yager's prior convictions to

5

explain why Yager would have engaged in the conspiracy to murder Invaders or members of rival motorcycle clubs and not simply to suggest that he had engaged in illicit conduct in the past and so he must have a propensity to do so again. Additionally, Yager has identified Michael Bilbrey, who is believed to be a member of the Invaders Motorcycle Club, and whose (now deceased) father served as the President of the Invaders Motorcycle Club in Indiana for years, as a potential defense witness on his witness list. The United States suspects that Yager intends to call Mr. Bilbrey to testify that either the conduct alleged in Racketeering Act # 1 did not occur as alleged or, perhaps more broadly, that there was no rivalry or animus between the Invaders and the Outlaws. Thus, evidence of the Yager's prior act of battering and attempting to murder a member of the rival Invaders Motorcycle Club provides direct evidence of the fact that there was animosity and rivalry between the Outlaws and the Invaders and thus, that Yager had both a motive and the requisite intent to engage in the conspiracy to murder Invaders as alleged in Racketeering Act #1.

Accordingly, the United States contends that such evidence of Yager's prior act of intimidation and violence against a Hells Angels-affiliated Invaders Motorcycle Club member, a crime Yager admittedly committed because of the victim's membership in that rival motorcycle club, is admissible under Rule 404(b)(2) of the Federal Rules of Evidence and Seventh Circuit case law for the purposes of proving Yager's motive and intent to commit acts of violence against members of rival motorcycle clubs. The United States further contends that the probative value of Yager's prior felony convictions, which the United States can prove with specific facts and circumstances, substantially

6

outweighs any prejudicial effect that proof of that conviction might have. The United States therefore contends that evidence of Yager's 1984 beating of Invader Motorcycle Club member Alex Thomas, and evidence of Yager's state battery and federal racketeering convictions based on that act, are admissible under Rule 404(b) and should not be excluded under Rule 403.

## II. ACTS OF INTIMIDATION AND VIOLENCE COMMITTED BY MEMEBERS OF THE WHITE REGION OF THE OUTLAWS ARE DIRECT EVIDENCE OF THE CHARGED ENTERPRISE AND RACKETEERING CONSPIRACY.

The United States intends to introduce evidence at trial regarding acts of intimidation and violence committed by the members of the White Region of the Outlaws Motorcycle Club as direct evidence of the charged racketeering enterprise and the existence of the racketeering conspiracy. Despite Yager's protestations to the contrary, this evidence is not "other acts" evidence, but rather is direct evidence of the charged crimes. Counts One and Two charge Yager with committing not just a fixed number of racketeering acts, but rather, charge him with conducting the affairs of an enterprise through a pattern of racketeering activity. Moreover, to prove a RICO conspiracy, the United States is not limited to evidence which demonstrates that a defendant personally committed or agreed to personally commit any of the predicate acts set forth in the indictment. Instead, to establish that a defendant was a member of a RICO conspiracy, "[t]he government need only prove that the defendant entered into an agreement 'with knowledge that the goal of the conspiracy is the commission of the RICO violation, that is [,] to conduct or participate in the affairs of an enterprise through a pattern of racketeering activity." *United States v. Campione*, 942 F.2d 429, 436 (7th Cir.

7

1991) (internal quotations omitted). Accordingly a defendant may be found guilty of RICO conspiracy, even though he did not personally agree to commit, or participate in the commission of any of the underlying substantive acts. *Salinas v. United States*, 522 U.S. 52, 65 (1997).

Nor is the fact that other individuals were charged and convicted of certain of these acts of intimidation and violence committed by members of the White Region of the Outlaws Motorcycle Club, while the defendant remained a fugitive, in any way dispositive of admissibility. Again, this is direct evidence of the charged crimes and it should not be excluded on the grounds that it is cumulative, that the probative value is outweighed by the danger of unfair prejudice, or that its presentation will lead to undue delay or confusing the issues under Rule 403. First, the evidence will be presented in the most efficient way possible and the evidence will corroborate rather than repeat other evidence presented during the course of the trial. Second, the evidence will not confuse the jury, but rather, will allow the jury to better understand the objects and purposes and methods and means of the criminal enterprise and conspiracy. Finally, the probative value of this direct evidence of the racketeering enterprise and racketeering conspiracy is not substantially outweighed by the danger of unfair prejudice. Yager argues that because he may not have been directly involved in each and every act of violence and intimidation, testimony regarding these acts is unfairly prejudicial. However, "[a]ll evidence is 'prejudicial' in the sense that it influences the jury's opinion, otherwise it would not be relevant," *United States v. Neely*, 980 F.2d 1074, 1086 (7th Cir. 1992). And to accept Yager's argument would mean that the government

8

could never be allowed to present evidence of substantive acts committed by a racketeering enterprise that may not directly involve the defendant. That is certainly not the law and therefore, the evidence is admissible. *Salinas v. United States*, 522 U.S. 52, 65 (1997).

## III. EVIDENCE OF DEFENDANT'S FLIGHT, CONTINUED ABSENCE TO AVOID PROSECUTION, AND USE OF FALSE NAME UPON ARREST IS ADMISSIBLE.

The United States intends to introduce evidence at trial that upon learning of his indictment in this case and that there was a warrant out for his arrest, Yager fled the country and went to Mexico where he lived under numerous assumed and false identities for approximately seventeen years. The United States further intends to introduce evidence at trial that when Yager was arrested in October 2014 in the Baja of Mexico, he provided a false name and a fake birth certificate in the name of David Dorian.

The probative value of flight as evidence of a defendant's guilt depends on the degree of confidence with which four inferences can be drawn: (1) from behavior to flight; (2) from flight to consciousness of guilt; (3) from consciousness of guilt to consciousness of guilt concerning the crime charged; and (4) from consciousness of guilt concerning the crime charged to actual guilt of the crime charged. *United States v. Kord*, 836 F.2d 368, 372 (7th Cir.), *cert. denied*, 488 U.S. 824, (1988). Here, the probative value of the evidence of Yager's flight and fugitive status is not only substantial, but it is also relevant and necessary to explain to the jury how and why Yager is standing trial in 2016 on a case that was indicted in 1997 and that involved conduct that occurred

9

principally from 1990 through 1995. Moreover, the degree of confidence with which the jury can draw the four inferences described above is substantial. *See United States v. Levine*, 5 F.3d 1100, 1107-08 (7th Cir. 1993) (concluding that the degree of confidence with which the jury could have drawn the inferences was substantial where the defendant's behavior included "selling his business, running off to California, repeatedly crossing into Mexico, leaving no forwarding address, and using phony names"); *United States v. Russell*, 662 F.3d 831, 851 (7th Cir. 2011) (stating that where a defendant flees in the immediate aftermath of a crime or shortly after he is accused of committing the crime, the inference that he is fleeing to escape capture and prosecution is strong); *see also United States v. Clark*, 45 F.3d 1247, 1250 (8th Cir. 1995) (recognizing that"[i]t is universally conceded today that the fact of an accused's flight, escape from custody, resistance to arrest, concealment, assumption of a false name, and related conduct, are admissible as evidence of consciousness of guilt, and thus of guilt itself") (internal quotation marks and citation omitted). Thus, the evidence of Yager's flight, continued absence to avoid prosecution, and use of a false name and false birth certificate upon arrest is admissible.

### IV. YAGER'S PRIOR CONVICTION IS ADMISSIBLE FOR IMPEACHMENT PURPOSES PURSUANT TO RULE 609.

Should Yager choose to testify, the United States intends to impeach him with the facts of his 1986 Indiana state battery conviction and his 1989 federal racketeering conviction in the United States District Court for the Northern District of Indiana. Yager argues such prior convictions fall outside of the ten-year time period set forth in

10

Rule 609(b) because Yager was convicted of his later, federal offense in 1989 and released from prison for that offense in 1992—a release date well over ten years ago. Yet, because Yager was a fugitive from 1997 until 2014, his fugitive status tolls the provisions of Rule 609(b). *United States v. Mullins*, 562 F.2d 999, 1000 (5th Cir. 1977). Simply put, Yager would not have had the protection of the ten-year limitation if he had not fled to avoid prosecution. By his voluntary wrongful act, he cannot gain the protection of Rule 609(b), which he otherwise would not have enjoyed if he had gone to trial with his codefendants during the year 2000. *Id.* Indeed, Title 18, United States Code, Section 3290 provides that "[n]o statute of limitation shall extend to any person fleeing from justice," which reflects a Congressional determination that a defendant should not gain advantages of statutory limitations by means of flight and therefore, refusal to toll the limitations in Rule 609(b) would undercut the clear intent of Congress. *Id.*

Moreover, the probative value of the prior conviction substantially outweighs any prejudicial effect. *See United States v. Hernandez*, 106 F.3d 737, 740 (7th Cir. 1997). First, given that the time limitation was tolled while Yager was a fugitive, his prior state and federal convictions occurred within the time period of Rule 609. Second, Yager's credibility will be of the utmost importance if he chooses to testify, and thus, his prior conviction should be admitted because of its value in allowing the jury to assess his credibility. Third, although there is a similarity between the two crimes given the importance of giving the jury access to evidence that will allow it to fairly assess Yager's credibility; this evidence of his earlier conviction should be admitted. *See United States v.*

11

*Causey*, 9 F.3d 1341, 1344–45 (7th Cir. 1993) (noting the danger of admitting evidence of similar crimes, but holding that a district court may nevertheless determine that the importance of the credibility determination requires admission of the previous conviction), *cert. denied*, 511 U.S. 1024, (1994). Finally, this Court will instruct the jury that evidence of Yager's prior convictions may be considered solely as evidence of motive and intent, as permitted by Rule 404(b), and to assess his credibility, as permitted by Rule 609.

## V. CONCLUSION

For these reasons, the United States respectfully requests that this Court deny Defendant Randy Yager's objections to the United States' Notice of Intent to Offer Evidence pursuant to Rule 404(b), Evidence of Defendant's Flight, and Evidence of Defendant's Prior Criminal Conviction pursuant to Rule 609 and admit the aforementioned evidence at trial.

Respectfully submitted this 22nd day of March, 2016.

        GREGORY J. HAANSTAD
        Acting United States Attorney

By:    *s/ Carol L. Kraft*
        Carol L. Kraft WBN 1000117
        Scott J. Campbell WBN 1017721
        Laura S. Kwaterski WBN 1055485Assistant
        United States Attorneys
        Office of the United States Attorney
        Eastern District of Wisconsin
        517 East Wisconsin Avenue, Room 530
        Milwaukee, Wisconsin 53202
        Telephone: (414) 297-1700