UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

UNITED STATES OF AMERICA,
      *Plaintiff,*

Case No.: 2:97-cr-00098-6

RANDY M. YAGER,
      *Defendant.*

**DEFENDANT'S REPLY DECLARATION IN FURTHER SUPPORT OF DEFENDANT'S MOTION FOR COMPASSIONATE RELEASE**

ALEXANDER E. BASINSKI, ESQ., being an attorney admitted to practice law in this State and District, and subject to the penalties of perjury, does hereby declare the following to be true and correct:

1. I represent the defendant, RANDY M. YAGER ("Mr. Yager" or "Defendant"). This reply declaration is offered in further support of Defendant's Motion for Compassionate Release ("Motion") filed on August 31, 2020. (*See* Dkt. No. 2222.)

2. Defendant Randy Yager moved for an order reducing sentence or modifying judgment because he has well-documented health conditions that render him particularly vulnerable to the severe health issues associated with COVID-19, including death. In its opposition, the government sets out several reasons why it feels such a release would be inappropriate. None of the government's claims provide grounds to deny Defendant's motion.

3. In this unprecedented time, and in light of the unique facts and circumstances, including Mr. Yager's medical conditions, Mr. Yager respectfully requests that this Court grant his Motion, reducing his sentence to time served; or, in the alternative, allowing him to serve the remainder of his sentence on home confinement.

# ARGUMENT

## I. Mr. Yager Has Established "Extraordinary and Compelling Reasons" Warranting a Sentence Reduction Based Upon His Severe Underlying Medical Conditions

4. In its response, the government states that "Yager first contends that the COVID-19 pandemic itself presents extraordinary and compelling reasons that justify compassionate release." (Gov't's Resp., Dkt. No. 2229 at 6.) The government misstates Mr. Yager's position. Mr. Yager does not suggest that the coronavirus pandemic, on its own, is sufficient justification for compassionate release. Indeed, as the government indicates, such a policy would be highly inconsistent with the compassionate release framework.

5. Instead, as this Court has recognized on numerous occasions, COVID-19 poses particular dangers to medically vulnerable inmates like Mr. Yager, which justifies compassionate release. *See, e.g.*, *United States v. Gonzalez*, 2020 WL 4437154 (E.D. Wis. Aug. 3, 2020) (granting compassionate release based upon defendant's chronic medical conditions); *United States v. Cunningham*, 2020 WL 4346811 (E.D. Wis. July 29, 2020) (granting compassionate release based upon defendant's chronic medical conditions); *United States v. Ford*, 2020 WL 5259254 (W.D. Wis. Sep. 3, 2020) (granting compassionate release based upon defendant's chronic medical conditions); *United States v. Berry*, 2020 WL 4001932 (E.D. Wis. July 15, 2020) (granting compassionate release based upon defendant's hypertension, obesity, and kidney disease).

6. Further, as this Court has previously found, FCI Milan, the facility where Mr. Yager resides, has been unable to protect its residents from transmission of this deadly pathogen:

> Although the transmission of the virus can be prevented or delayed by taking certain precautions like frequent sanitizing and social distancing, it is very difficult to carry out such practices at FCI Milan []. As of July 2, 2020, 93 inmates and 53 staff members at FCI Milan have tested positive for COVID-19 . . . Needless to say, Defendant's current living conditions at FCI Milan heighten his risk of contracting COVID-19.

2

*See Berry*, 2020 WL 4001932 at *2

7. Critically, this Court has also recognized that compassionate release is appropriate even where a defendant's facility has zero positive cases of COVID-19. *See United States v. Anderson*, 2020 WL 4339220 (E.D. Wis. Jul. 29, 2020) (granting compassionate release despite zero reported cases among inmate population based upon defendant's chronic medical conditions).

8. In its response, the government attempts to downplay Mr. Yager's chronic medical conditions by stating that he "fails to demonstrate that [] his health issues fall within any of the specified categories," and that "[t]here is no indication that those conditions are not under good control." (*See* Gov't's Resp., Dkt. No. 2229 at 7-8.)

9. As noted in Mr. Yager's motion, and supported by his medical records, Mr. Yager suffers from numerous chronic health conditions including hypertension, aortic aneurysm, enlarged prostate, old myocardial infarction, constipation, psoriasis, follicular disorder, muscle weakness, a shoulder and upper arm injury, and several mobility issues. (*See* Def.'s Mot., Dkt. No. 2222, Ex. B at 3-4, 29-31.) Furthermore, Mr. Yager has a body mass index of 36.3, placing him in the "obese" category. (*See id*. at 11.)

10. The Center for Disease Control ("CDC") has promulgated guidelines indicating that adults of any age with certain medical conditions *are* at increased risk for severe illness from the virus that causes COVID-19. These conditions include heart conditions such as heart failure, coronary artery disease, or cardiomyopathies and obesity (BMI between 30-40 kg/m$^2$) or severe obesity (BMI greater than 40 kg/m$^2$).[1]

---

[1] *People with Certain Medical Conditions*, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html?CDC_AA_refVal=https%3A%2F%2Fwww.cdc.gov%2Fcoronavirus%2F2019-ncov%2Fneed-extra-precautions%2Fgroups-at-higher-risk.html, CDC (last visited October 9, 2020).

3

11. Additionally, the CDC's guidelines indicate that adults of any age with certain conditions might be at increased risk for severe illness from the virus that causes COVID-19. These conditions include hypertension or high blood pressure.[2]

12. The government's argument that Mr. Yager's hypertension and other chronic conditions "remain under good control" should carry no weight. The CDC guidelines do not differentiate between conditions which are "under good control" and those which are not – nor should this Court.

13. The bottom line is that the coronavirus is here, and will continue to be an issue for several years. Mr. Yager is at risk for severe illness and death based upon his obesity and hypertension, among other conditions. Concerns over mobility and personal hygiene only serve to increase the likelihood that Mr. Yager will become infected with COVID-19.

14. Moreover, it is clear that despite accommodations by the Bureau of Prisons ("BOP"), Mr. Yager nevertheless suffers from chronic skin conditions, obesity, and requires assistance with simple tasks such as showering due to his mobility issues. (*See id*. at 1, 3-4.)

15. Upon information and belief, Mr. Yager requires assistance from other inmates when carrying purchases from commissary, carrying his food tray, and when engaging in certain personal hygiene practices.

16. As of October 12, 2020, FCI Milan reports one confirmed case of COVID-19 (a staff member).[3]

17. The coronavirus pandemic, however, has shown no signs of slowing. At the time Mr. Yager's Motion was filed, there were approximately 23 million COVID-19 cases resulting in

---

[2] *Id*.
[3] *COVID-19 Cases*, https://www.bop.gov/coronavirus/, BOP (last visited October 12, 2020).

800,000 deaths worldwide. (*See* Def.'s Mot, Dkt. No. 2222 at 5.) At the same time, there were 5,752,653 COVID-19 cases resulting in 178,998 deaths reported in the United States. (*See id.*)

18.  As of October 9, 2020, there are 36,361,054 COVID-19 cases resulting in 1.056,186 deaths worldwide.[4] The World Health Organization ("WHO") reports that the highest percentage of death occurs among those aged 65 years and above (approximately 75%).[5] Mr. Yager is presently 64 years of age.

19.  As of October 12, 2020, there are 7,694,865 COVID-19 cases resulting in 213,614 deaths in the United States.[6]

20.  The risk posed by the coronavirus pandemic is as great now as it has been at any point since the pandemic arrived in the United States in late January or early February of 2020. Mr. Yager's chronic medical conditions, which place him at increased risk for severe illness from COVID-19, in conjunction with the continued spread of the coronavirus pandemic, present extraordinary and compelling reasons warranting compassionate release.

**II.     The § 3553(A) Factors Weigh in Favor of Mr. Yager's Release**

21.  Mr. Yager is 64 years of age and suffers from numerous debilitating medical conditions. Furthermore, Mr. Yager no longer holds any position of power within the Outlaw Motorcycle Club, which was a crucial element of his involvement in the offenses for which he was convicted. Finally, the § 3553(a) factors regarding deterrence and just punishment must be examined through the narrow lens of compassionate release. Taken as a whole, the § 3553(a) factors clearly weigh in favor of Mr. Yager's release. (*See* Def.'s Mot., Dkt. No. 2222 at 13-14.)

---

[4] *Weekly Operational Update on COVID-19*, https://www.who.int/publications/m/item/weekly-update-on-covid-19-9-october-2020, WHO (last visited October 12, 2020).
[5] *Coronavirus disease (COVID-19) Global epidemiological situation,* https://www.who.int/docs/default-source/coronaviruse/situation-reports/20201005-weekly-epi-update-8.pdf, WHO (last visited October 12, 2020).
[6] *United States COVID-19 Cases and Deaths by State*, https://covid.cdc.gov/covid-data-tracker/?CDC_AA_refVal=https%3A%2F%2Fwww.cdc.gov%2Fcoronavirus%2F2019-ncov%2Fcases-updates%2Fcases-in-us.html#cases_casesinlast7days, CDC (last visited October 12, 2020).

5

22. In its response, the government argues that a defendant may no longer be an actual danger, but still be ineligible for early release under 18 U.S.C. § 3582(c)(1)(A). (*See* Gov't's Resp., Dkt. No. 2229 at 11.) In support of this proposition, the government cites only to out-of-circuit authority.

23. This Court has recognized, however, that although releasing a defendant may appear to contradict the need for general deterrence, "Congress also granted courts the authority to act in unusual and extraordinary circumstances," and noted that "it is highly doubtful" that would-be criminals consider the circumstances of their particular case and how 18 U.S.C. § 3582(c)(1)(A) might apply in that situation when deciding whether to break the law. *United States v. Turner*, 2020 WL 5717096 at *5 (E.D. Wis. Sep. 24, 2020) (granting compassionate release despite defendant having served a term less than statutory mandatory minimum sentence).

24. Mr. Yager's crime of conviction is, without doubt, serious. In its response, the government discusses each of Mr. Yager's eight racketeering acts which resulted in the instant conviction. However, each racketeering act cited by the government occurred no later than on or about March 3, 1995; more than twenty-five years ago. The dates are as follows:

   a. Racketeering Act 1: On or about June 26, 1994;
   b. Racketeering Act 2: Between on or about July or August 1994;
   c. Racketeering Act 3: Between on or about September 20, 1994 and September 25, 1994;
   d. Racketeering Act 4: Between on or about September 1994 and October 12, 1994;
   e. Racketeering Act 5: Between on or about August or September 1994 and November 7, 1994;
   f. Racketeering Act 6: Between on or about August or September 1994 and November 7, 1994;
   g. Racketeering Act 7: On or about January 28, 1995; and
   h. Racketeering Act 8: Between on or about January 1995 and March 3, 1995.

6

25. Mr. Yager does not dispute that the actions which to the instant conviction are extremely serious in nature. However, this Court must consider the passage of time, Mr. Yager's present medical condition, and the fact that he no longer holds a position of authority in the Outlaw Motorcycle Club ("OMC").

26. Each of the above noted racketeering acts occurred, as the government points out, while Mr. Yager "was a chapter boss, and then a regional boss in the Outlaw Motorcycle Club." (Gov't's Resp., Dkt. No. 2229 at 12.) At that time, the government notes that Mr. Yager "had a high level of control, and answered only to the national boss [of the OMC]." (*Id.*)

27. In addition to the fact that these events occurred more than 25 years ago, Mr. Yager is no longer an active member of the Outlaws Motorcycle Club and retains no position of authority or control. He has known many members of the Outlaws Motorcycle Club since his teenage years, but Mr. Yager's health and safety is their first priority. Upon information and belief, there will be no contact between the club and Mr. Yager because doing so will threaten not only his freedom, but his health. Furthermore, the Outlaws Motorcycle Club no longer tolerates the type of behavior which led to Mr. Yager's conviction.

28. Although Mr. Yager's decision to flee prosecution is regrettable, he nevertheless demonstrated – for approximately seventeen years – that he could live a law-abiding life. Clearly, Mr. Yager made an effort to distance himself from the actions which led to the instant prosecution and has exhibited no signs of recidivism. Indeed, this Court may recall the numerous letters submitted by friends and neighbors who knew Mr. Yager during that time period. (*See* Sentencing Memorandum, Dkt. No. 2180 at 2.)

29. When brought before this Court, Mr. Yager accepted responsibility and pled guilty to Counts 1 and 2 of the Second Superseding Indictment. (*See* Minute Entry, Dkt. No. 2164.)

7

Case 2:97-cr-00098-JPS   Filed 10/13/20   Page 7 of 10   Document 2234

30. Mr. Yager is presently 64 years of age, suffers from numerous chronic medical conditions which limit his strength and mobility, and he no longer occupies any position of authority within the Outlaw Motorcycle Club. Indeed, Mr. Yager has been incarcerated since his arraignment on November 18, 2014. His term of imprisonment is set to expire on July 27, 2027.

31. Upon information and belief, Mr. Yager has been a model inmate with no history of violence or infractions of any kind. Indeed, the BOP has classified his risk level as "minimal." (*See* Def.'s Mot., Dkt. No. 2222 at Ex. D.)

32. Due to his numerous chronic medical conditions, Mr. Yager no longer poses a threat to any person(s) in the community. (*See* Def.'s Mot., Dkt. No. 2222 at 13-14.) It appears that the government concedes this fact in its response by arguing that "[a] defendant may no longer be an actual danger, but still be ineligible for early release." (Gov't's Resp., Dkt. No. 2229 at 11.) Apart from describing events that transpired approximately twenty-five years ago, the government offers no evidence that Mr. Yager is a danger to the community *at this time*.

33. Mr. Yager suffers from numbness in his legs which frequently renders him unable to walk. (*See* Def.'s Mot., Dkt. No. 2222 at Ex. 11.) Due to his limited mobility, he is unable to walk back and forth between his cell and the chow hall for lunch and dinner. (*See id*.) These physical limitations, coupled with his status (or lack thereof) within the Outlaws Motorcycle Club eliminate any risk of danger to the community posed by Mr. Yager.

34. The government further argues that "[t]o reduce his sentence further would unduly depreciate these offenses and Yager's role in them." 18 U.S.C. § 3553(a)(2) states that a court shall consider the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; to afford adequate deterrence to criminal conduct; to protect the public from further crimes of the defendant; and to

8

provide the defendant with needed education or vocational training, medical care, or other correctional treatment. *See id*.

35. In fixing a sentence of 180 months for Mr. Yager and life sentences for several of his co-defendants, this Court has already demonstrated its consideration of the seriousness of the offense.

36. Furthermore, this Court has recognized "it is highly doubtful" that would-be criminals consider compassionate release as a factor when contemplating whether to break the law. *See Turner*, 2020 WL 5717096 at *5. As a result, a reduction in Mr. Yager's sentence will not minimize the effect of the sentence as a deterrent to others.

37. Finally, Mr. Yager has already demonstrated that he poses no threat to the public at the present time, and that he has taken full advantage of the educational and vocational training provided to him while incarcerated. (*See* Def.'s Mot. at Ex's. C, D.)

38. With the permission of the United States Probation Department, Mr. Yager would reside and/or serve the remainder of his sentence with Lela Wislocka at 2046 W. Iowa Street in Chicago, Illinois 60622.

## CONCLUSION

39. The extraordinary and compelling circumstances presented by the uncontrolled spread of COVID-19, combined with Mr. Yager's chronic severe medical conditions warrant a reduced or modified sentence to ensure the protection of both Mr. Yager and his fellow inmates. Releasing Mr. Yager under 18 U.S.C. § 3582(c)(1)(A) will reduce his chances of contracting COVID-19, which would likely transform Mr. Yager's incarceration into a death sentence.

40. Furthermore, Mr. Yager is simply not the same person who participated in the acts which led to the instant conviction. More than 25 years have passed since the commission of those

acts. Mr. Yager no longer holds any position of authority in the Outlaws Motorcycle Club. He is a 64-year-old with chronic medical conditions that have severely diminished his strength and mobility. We certainly do not seek to minimize the actions which led to the instant conviction, but respectfully ask that the Court consider these factors against the backdrop of the coronavirus pandemic, Mr. Yager's health condition, and the passage of time.

41. We respectfully request that this Court order Mr. Yager's immediate release, or, in the alternative, allow Mr. Yager to serve the remainder of his sentence on home incarceration.

DATED: Buffalo, New York
October 13, 2020

Respectfully submitted,

/s/Alexander E. Basinski
_____
ALEXANDER E. BASINSKI, ESQ.
ERIN MCCAMPBELL PARIS, ESQ.
LIPSITZ GREEN SCIME & CAMBRIA LLP
Attorney for Defendant
RANDY M. YAGER
Office and Post Office Address
42 Delaware Avenue – Suite 300
Buffalo, New York 14202
(716) 849-1333

TO: CAROL L. KRAFT, ESQ.
ASSISTANT UNITED STATES ATTORNEY
517 E Wisconsin Avenue – Room 530
Milwaukee, WI 53202