# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

| UNITED STATES OF AMERICA, | |
|---|---|
| Plaintiff, | |
| v. | Case No. 97-CR-98-6-JPS |
| RANDY M. YAGER, | **ORDER** |
| Defendant. | |

**1.    BACKGROUND**

Defendant's counsel filed a motion for compassionate release[1] on Defendant's behalf. (Docket #2222). The Government filed a response and Defendant subsequently replied. (Docket #2229, #2234). Defendant has since filed both a supplement and a motion for an order to expedite a hearing on his motion for compassionate release. (Docket #2237, #2238). The Court has reviewed these submissions, concluding that Defendant's motion for compassionate release must be denied.

---

[1] Alternatively, Defendant requests that the Court issue an order permitting him to serve the remainder of his sentence on home confinement. (Docket #2222 at 6). Only the Bureau of Prisons ("BOP") has the authority to determine whether a defendant may serve the remainder of his or her sentence under home confinement, not the courts. *See United States of America v. Hollowell*, 18-cr-180-pp, 2020 WL 4048487, at *1 (E.D. Wis. July 20, 2020) (citing CARES Act, Pub. L. 116-136, § 12003(b)(1)(2)). Because the Court cannot grant Defendant's request, his motion for home confinement will be denied as moot.

2. **FACTS**[2]

In March 2016, Defendant pleaded guilty to one count of participation in an enterprise engaged in racketeering activity and one count of conspiracy to participate in an enterprise engaged in racketeering activity, in violation of 18 U.S.C. §§ 1962(c) and 1962(d), respectively. The racketeering offenses to which Defendant pleaded guilty stem from his involvement in the Outlaws Motorcycle Club ("OMC"). Not only was Defendant a member of this organization, but he also served as a chapter president and then a regional boss. The underlying racketeering acts to which Defendant pleaded guilty involved arson, violence, and murder, among other things, in addition to conspiring to commit the same.

The Court issued a warrant for Defendant's arrest in 1997. However, Defendant fled to Mexico, where he lived as a fugitive for almost twenty years. He was apprehended in 2014. After being deported and transferred to the United States, he was arraigned on the Second Superseding Indictment in 2015. In July 2016, this Court sentenced Defendant to a total term of imprisonment of 180 months to be followed by a total term of supervised release of five years. (Docket #2184). His expected release date is July 27, 2027.[3]

Defendant is currently incarcerated at Federal Correctional Institution Milan ("FCI Milan") in Milan, Michigan. As of January 4, 2021, there were 32 confirmed active inmate cases of COVID-19 and 13 staff

---

[2]The bulk of the information in this section can be found within the Second Superseding Indictment, (Docket #2101), Defendant's plea agreement, (Docket #2170), and the Government's response to Defendant's motion, (Docket #2229).

[3]Fed. Bureau of Prisons, Find an Inmate, https://www.bop.gov/inmateloc/ (last visited Jan. 5, 2021).

cases.[4] A total of 197 inmates have recovered from the virus and three have died.[5] This Court previously recognized that the "open dormitory" living situation at FCI Milan heightened a defendant's risk of contracting COVID-19. *United States v. Berry*, 09-CR-90-JPS, 2020 WL 4001932, at *1 (E.D. Wis. July 15, 2020). Defendant argues that his limited mobility and various health conditions increase the likelihood that he will become infected with COVID-19 because he is dependent on the assistance of other inmates to complete basic daily tasks.

Defendant claims to suffer from a host of medical issues, including hypertension, an unruptured aortic aneurysm, psoriasis, follicular disorder, spinal stenosis, gadolinium poisoning, muscle weakness, enlarged prostate, and unspecified abnormalities of gait and mobility. (Docket #2222 at 3, 10). Defendant also claims that he has previously suffered from a heart attack. (*Id.* at 3). Defendant is also considered obese, with a body mass index ("BMI") of 36.3. (*Id.* at 11). It is against this factual backdrop that the Court evaluates Defendant's motion.

### 3.  LEGAL STANDARD

The Court can modify a term of imprisonment "upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf" or thirty days after the warden at the defendant's facility has received such a request for release, "whichever is earlier." 18 U.S.C. § 3582(c)(1)(A). There must also be "extraordinary and compelling reasons warrant[ing] such a reduction[.]" *Id.* § 3582(c)(1)(A)(i).

---

[4]Fed. Bureau of Prisons, COVID-19 Coronavirus, https://www.bop.gov/coronavirus/ (last visited Jan. 4, 2021).

[5]*Id.*

While § 3582(c)(1)(A) instructs that a reduction must also be "consistent with applicable policy statements issued by the [United States] Sentencing Commission," this circuit recently held that the relevant policy statement, U.S.S.G. § 1B1.13, is inapplicable to prisoner-initiated motions for compassionate release. *United States v. Gunn*, 980 F.3d 1178, 1180 (7th Cir. 2020). Therefore, a court has discretion when determining what constitutes an "extraordinary and compelling" reason warranting compassionate release. *Id.* ("[T]he trailing paragraph of § 3582(c)(1)(A) does not curtail a district judge's discretion. Any decision is 'consistent with' a nonexistent policy statement."). A district court may also "make the same determinations that would normally be left to the Director of the Bureau of Prisons [under the catchall provision at U.S.S.G. § 1B1.13 n.1(D)]." *United States v. Brown*, Case No. 01-CR-196-JPS, 2020 WL 4569289, at *4 (E.D. Wis. Aug. 7, 2020). Yet, this Court will evaluate prisoner-initiated motions for compassionate release with due regard for the guidance provided in § 1B1.13 because it "provide[s] a working definition of 'extraordinary and compelling reasons' . . . [which] can guide discretion without being conclusive." *Gunn*, 980 F.3d at 1180; *see also United States v. Mays*, Case No. 1:08-cr-00125-TWP-DML, 2020 WL 7239530, at *3 (S.D. Ind. Dec. 9, 2020) (evaluating compassionate motions brought under the "extraordinary and compelling" prong of § 3582(c)(1)(A) with "due regard" for § 1B1.13).

The commentary to the Sentencing Guidelines explains that "extraordinary and compelling reasons exist" when "[t]he defendant is suffering from a terminal illness, (i.e., a serious and advanced illness with an end of life trajectory)," such as cancer or advanced dementia. U.S.S.G. § 1B1.13 n.1.(A)(i). The commentary also considers a defendant's medical condition to be an extraordinary and compelling reason if:

> [t]he defendant is suffering from a serious physical or mental condition, suffering from a serious functional or cognitive impairment, or experiencing deteriorating physical or mental health because of the aging process, that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

*Id.* §1B1.13 n.1.(A)(ii).

The Court will also consider whether "the defendant is not a danger" to others or the community, as provided in 18 U.S.C. § 3142(g). *Id.* § 1B1.13(B)(2).

Additionally, prior to modifying a term of imprisonment, the Court must evaluate the sentencing factors set forth in 18 U.S.C. § 3553(a), if applicable. 18 U.S.C. § 3582(c)(1)(A). Pursuant to § 3553(a), when determining the sentence to be imposed, the Court shall consider, among other things: the nature and circumstances of the offense; the defendant's history and characteristics; and the need for the sentence to (1) reflect the seriousness of the offense, promote respect for the law, and provide just punishment, (2) afford adequate deterrence, (3) protect the public, and (4) provide the defendant with effective training, care, and/or treatment.

### 4. ANALYSIS

First, the Court notes, and the Government concedes, that Defendant exhausted his administrative remedies. (Docket #2222-1, #2229 at 5). Next, the Court determines whether Defendant has an extraordinary and compelling reason warranting his release.

This Court held that the outbreak of COVID-19, together with a defendant's underlying medical conditions that place the defendant at "high risk" should he contract the disease, establish an extraordinary reason warranting release. *See, e.g., United States v. Gonzales*, Case No. 13-

CR-101-JPS, 2020 WL 4437154, at *4 (E.D. Wis. Aug. 3, 2020). Defendant is obese, which, according to the Centers for Disease Control and Prevention ("CDC") increases one's risk for severe illness from COVID-19.[6] The CDC also enumerates a number of heart conditions that could increase one's risk of severe illness, such as heart failure, coronary artery disease, cardiomyopathies, and pulmonary hypertension.[7] Although neither "aortic aneurysm" nor "old myocardial infarction" are listed, the CDC recognizes an aortic aneurysm as a condition that is related to heart disease.[8] *See also United States v. Page*, Crim. No. 3:15-cr-00055 (AWT), 2020 WL 7258034, at *1 (D. Conn. Dec. 10, 2020) (recognizing the severity of defendant's aortic aneurysm, although it is not one of the heart conditions recognized on the CDC's list, because an aortic aneurysm can lead to a heart attack and other complications). Defendant also suffers from hypertension. CDC guidance states that "adults of any age" with hypertension or high blood pressure "might be at an increased risk for severe illness from the virus that causes COVID-19[.]"[9] Although hypertension alone does not definitively place someone at high risk of severe illness, in conjunction with Defendant's obesity and his aortic aneurysm, the Court finds that Defendant has

---

[6]Ctrs. for Disease Control and Prevention, Coronavirus Disease 2019 (COVID-19), People with Certain Medical Conditions, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited Jan. 5, 2021).

[7]*Id.*

[8]Ctrs. for Disease Control and Prevention, Heart Disease, Other Conditions Related to Heart Disease, https://www.cdc.gov/heartdisease/other_conditions.htm (last visited Jan. 4, 2021).

[9]Ctrs. for Disease Control and Prevention, Coronavirus Disease 2019 (COVID-19), People with Certain Medical Conditions, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited Jan. 5, 2021).

established an extraordinary and compelling reason. Therefore, the Court need not determine whether Defendant's other medical conditions establish additional extraordinary and compelling reasons.

Next, the Court considers whether Defendant is a danger to any other person or the community, pursuant to § 3142(g), and whether the § 3553(a) factors militate against his release. Defendant argues that the § 3553(a) factors in light of his age (64), dedication to education while incarcerated, minimal risk level as determined by the BOP (*see* Docket #2222-4), and severe medical conditions "weigh heavily in favor of release." (Docket #2222 at 14). Perhaps Defendant's ambulatory issues, medical conditions, and his personal development while incarcerated would prevent him from harming others or the community, if the Court were disposed to grant his motion. However, consideration of the remaining § 3553(a) sentencing factors weighs heavily against Defendant's release. Defendant was a leader of the OMC. As such, he conspired to have others commit, participated in, and/or sanctioned violent and destructive acts against others and their property throughout the United States. Defendant has served less than half of his 180 month sentence for these heinous crimes. Further, after committing the aforementioned offenses, Defendant fled from the United States so as to avoid facing the legal consequences of his actions. He lived as a fugitive in Mexico for nearly 20 years.

In the case of fugitive defendants, "[t]he need for general deterrence and to promote respect for the law, in particular, weigh strongly against Defendant." *United States v. Hallahan*, Case Nos. 1:99-cr-10045, 1:12-cr-10054, 2020 WL 4193112, at *4 (C.D. Ill. July 21, 2020). To release Defendant at this juncture "would suggest that one who disrespects the law . . . and flee[s] the consequences may avail himself of its softer side to avoid

Page 7 of 8
Case 2:97-cr-00098-JPS    Filed 01/12/21    Page 7 of 8    Document 2239

responsibility. That cannot be; the sentence must promote respect for the law." *Id.* Defendant's sentence must also reflect the serious nature of his crimes. To release him now, after serving less than half of his sentence, would certainly fail to satisfy that factor. Lastly, notwithstanding Defendant's medical issues and allegedly changed personality, the Court is unconvinced that Defendant is not currently a flight risk. In light of the § 3553(a) factors, the Court will deny Defendant's motion for compassionate release.

5.  **CONCLUSION**

Defendant has exhausted his administrative remedies and also has suggested extraordinary reasons warranting his release. Nevertheless, the Court has concluded that the § 3553(a) factors strongly militate against Defendant's release. Therefore, the Court must deny Defendant's motion for compassionate release. (Docket #2222). Defendant's motion for an order to expedite hearing of his motion, (Docket #2238), will be denied as moot.

Accordingly,

**IT IS ORDERED** that Defendant's motion for compassionate release (Docket #2222) be and the same is hereby **DENIED**; and

**IT IS FURTHER ORDERED** that Defendant's motion, in the alternative, for home confinement (Docket #2222) and his motion for an order to expedite a hearing on the motion (Docket #2238) be and the same are hereby **DENIED as moot**.

Dated at Milwaukee, Wisconsin, this 12th day of January, 2021.

BY THE COURT:

_____
J. P. Stadtmueller
U.S. District Judge