UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

UNITED STATES OF AMERICA,

      Plaintiff,

v.

RANDY M. YAGER,

      Defendant.

Case No. 97-CR-98-6-JPS

**ORDER**

  Before the Court is Defendant Randy M. Yager's ("Defendant") third motion for compassionate release. ECF No. 2342.[1] Despite Defendant's prolific filing of motions for compassionate release,[2] the Court ordered the Government to respond to the instant motion because of Defendant's "belie[f] [that] there is new information available regarding his medical conditions and the care he is receiving." ECF No. 2343 at 1 (quoting ECF No. 2342 at 2 and citing ECF No. 2342-1) (January 2023 email stating that "[t]here [are] no rehabilitative services or medical treatment that is offered

---

[1]To the extent the motion is styled as one for reconsideration of the Court's prior orders, the Court considers it a standalone, third motion for compassionate release, as the motion is filed more than one year after the Court's denial of the second motion, *see infra* note 2, and it is based on alleged "new information." ECF No. 2345 at 2 n.1; *see also* Fed. R. Civ. P. 60(b) (setting one year deadline for motion for relief from order).

[2]On August 31, 2020, Defendant filed his first motion for compassionate release. ECF No. 2222. After the motion became fully briefed, the Court denied it on January 12, 2021. ECF No. 2239. Six months later, on July 28, 2021, Defendant filed a second motion for compassionate release, which the Court denied without setting a briefing schedule because the second motion "d[id] not raise any issues that the Court did not already consider and adjudicate in its prior order." ECF No. 2281.

to correct [Defendant's] condition . . . . This could be corrected with out side [sic] services the B.O.P. can not provide in the foreseeable future"). The Court noted, however, that it "doubt[ed] that much has changed at least in the way of the 18 U.S.C. § 3553(a) factors." *Id.* at 2.

Accordingly, on July 26, 2023, the Government filed its response, ECF No. 2345,[3] and on August 15, 2023, Defendant filed a reply brief, ECF No. 2346. For the reasons set forth below, Defendant's third motion for compassionate release will be denied.

1. **FACTS**[4]

In March 2016, Defendant pleaded guilty to one count of participation in an enterprise engaged in racketeering activity and one count of conspiracy to participate in an enterprise engaged in racketeering activity, in violation of 18 U.S.C. §§ 1962(c) and 1962(d), respectively. The racketeering offenses to which Defendant pleaded guilty stem from his involvement in the Outlaws Motorcycle Club (the "Outlaws"). Not only was Defendant a member of this organization, but he also served first as a chapter president and then a regional boss of the Outlaws. The underlying racketeering acts to which Defendant pleaded guilty involved arson, violence, and murder, among other things, in addition to conspiring to commit the same.

The Court issued a warrant for Defendant's arrest in 1997. However, Defendant fled to Mexico, where he lived as a fugitive for almost 20 years.

---

[3] The Court will grant the Government's motion to seal its response. ECF No. 2344.

[4] The bulk of the information in this section is reproduced from the Court's order on Defendant's first motion for compassionate release. ECF No. 2239 at 2–3 (citing ECF Nos. 2120, 2170, 2184, 2229). The Court omits internal citations that can be found in that Order but includes citations for information new to this Order.

He was apprehended in 2014. After being deported and transferred to the United States, he was arraigned on the Second Superseding Indictment in 2015. In July 2016, this Court sentenced Defendant to a total term of imprisonment of 180 months to be followed by a total term of supervised release of five years. His expected release date is July 27, 2026.[5] Defendant represents that he "has a home detention eligibility date of January 27, 2026" and that he "has earned 400 days of credit towards Home Confinement." ECF No. 2342 at 1.

**2.  LEGAL STANDARD**

The Court can modify a term of imprisonment "upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons (the 'BOP') to bring a motion on the defendant's behalf" or thirty days after the warden at the defendant's facility has received such a request for release, "whichever is earlier." 18 U.S.C. § 3582(c)(1)(A). There must also be "extraordinary and compelling reasons warrant[ing] such a reduction[.]" *Id.* § 3582(c)(1)(A)(i).

While § 3582(c)(1)(A) instructs that a reduction must also be "consistent with applicable policy statements issued by the [United States] Sentencing Commission," this circuit recently held that the relevant policy statement, U.S.S.G. § 1B1.13, is inapplicable to prisoner-initiated motions for compassionate release. *United States v. Gunn*, 980 F.3d 1178, 1180 (7th Cir. 2020). Therefore, a court has discretion when determining what constitutes an "extraordinary and compelling" reason warranting compassionate release. *Id.* ("[T]he trailing paragraph of § 3582(c)(1)(A) does

---

[5]Fed. Bureau of Prisons, Find an Inmate. https://www.bop.gov/inmateloc/. (last visited Sept. 18, 2023).

not curtail a district judge's discretion. Any decision is 'consistent with' a nonexistent policy statement."). A district court may also "make the same determinations that would normally be left to the Director of the Bureau of Prisons [under the catchall provision at U.S.S.G. § 1B1.13 n.1(D)]." *United States v. Brown*, No. 01-CR-196-JPS, 2020 WL 4569289, at *4 (E.D. Wis. Aug. 7, 2020).

Yet, this Court will evaluate prisoner-initiated motions for compassionate release with due regard for the guidance provided in § 1B1.13 because it "provide[s] a working definition of 'extraordinary and compelling reasons' . . . [which] can guide discretion without being conclusive." *Gunn*, 980 F.3d at 1180; *see also United States v. Mays*, No. 1:08-cr-00125-TWP-DML, 2020 WL 7239530, at *3 (S.D. Ind. Dec. 9, 2020) (evaluating compassionate motions brought under the "extraordinary and compelling" prong of § 3582(c)(1)(A) with "due regard" for § 1B1.13).

Prior to modifying a term of imprisonment, the Court must also consider the § 3553(a) factors, if applicable. 18 U.S.C. § 3582(c)(1)(A).

3. ANALYSIS[6]

### 3.1 Extraordinary and Compelling Reasons

In its order denying Defendant's first motion for compassionate release, the Court held that Defendant had established an extraordinary and compelling reason for release because his diagnoses of hypertension, obesity, and aortic aneurysm placed him "at high risk of severe illness" should he contract COVID-19. ECF No. 2239 at 6–7. The Court ultimately denied the first motion on the basis of 18 U.S.C. § 3142(g), which requires

---

[6]The Government concedes that Defendant has exhausted his administrative remedies. ECF No. 2345 at 2 n.1.

Page 4 of 9
Case 2:97-cr-00098-JPS   Filed 09/22/23   Page 4 of 9   Document 2348

the Court to consider "the safety of any other person and the community," and the § 3553(a) factors. *Id.* at 7–8.

At this juncture, the Government "concedes that [Defendant's] health challenges are significant." ECF No. 2345 at 5. Defendant's "most recent application for release repeats [the same] arguments" detailed in his prior motion, but adds that a BOP services administrator has written that "[t]here is no rehabilitative services or medical treatment that is offered to correct his condition . . . . This could be corrected with out side [sic] services the B.O.P. can not provide in the foreseeable future." *United States v. Clark*, No. 23-1808, 2023 WL 6058481, at *1 (7th Cir. Sept. 18, 2023); ECF No. 2342-1 at 17. Because the motion is largely the same, the Court "need not repeat what [it] said" in its prior order. *Clark*, 2023 WL 6058481, at *1. The Court will proceed with the assumption that, as before, Defendant has proffered an extraordinary and compelling reason for release.[7]

---

[7] Parenthetically, the Court agrees with the Government that Defendant's medical records show that his symptoms are being treated. ECF No. 2345 at 5; ECF No. 2345-1 at 21 (prescribing medication and setting follow-up appointments for "progressive leg weakness and gait instability"). Simply because the BOP cannot "correct" Defendant's conditions with a magic silver bullet does not mean that it cannot manage his pain and symptoms.

Further, Defendant exhausted his request with the warden of his institution, who did not move for compassionate release on his behalf, nor did the BOP move Defendant to home confinement for the remainder of his term of incarceration. ECF No. 2345-2; *see also United States v. Williams*, 829 F. App'x 138, 139 (7th Cir. 2020) (BOP has "plenary control" over inmate placement in home confinement) (citing *Tapia v. United States*, 564 U.S. 319, 331 (2011) and *United States v. Ko*, 739 F.3d 558, 561 (10th Cir. 2014)). However, the Court understands that Defendant has difficulty navigating to the pill line to collect his medication and will therefore consider his medical conditions extraordinary and compelling under the circumstances, as it did before. *See, e.g.*, ECF No. 2345-1 at 5 (explaining Defendant's difficulty getting to the pill line, particularly in the winter).

### 3.2 The § 3553(a) Factors

Even though Defendant has proffered an extraordinary and compelling reason for release, "[a] district court may grant a motion for compassionate release only when the § 3553(a) factors support it." *United States v. Kurzynowski*, 17 F.4th 756, 760 (7th Cir. 2021). Given the Court's prior denial of compassionate release on this basis, Defendant "understands that the [§] 3553(a) factors are the biggest point of contention on whether he will be released." ECF No. 2346 at 2.

The § 3553(a) factors include the following: the nature and circumstances of the offense; the defendant's history and characteristics; and the need for the sentence to (1) reflect the seriousness of the offense, promote respect for the law, and provide just punishment, (2) afford adequate deterrence, (3) protect the public, and (4) provide the defendant with effective training, care, and/or treatment. 18 U.S.C. § 3553(a). In addition to considering the § 3553(a) factors, the Court may also consider—in accordance with the nonbinding policy statement set forth in § 1B1.13—whether "the defendant poses 'a danger to the safety of any other person or to the community' as defined in § 3142(g)." *Kurzynowski*, 17 F.4th at 759.

Defendant argues that he has served nearly 80% of his sentence, which does not account for the credits he has earned towards home confinement. ECF No. 2346 at 2. Thus, he avers that as of August 2023, he has only nine months left in the prison setting. *Id.* Defendant asserts that he has maintained "clear conduct," has earned a "minimum risk of recidivism" score, and is housed at a low security prison because "BOP recognizes that he does not pose a risk." *Id.* at 2–3; ECF No. 2342 at 9. He also suggests that his age and health, "mostly his inability to even move," mitigate any concerns raised by the § 3553(a) factors. ECF No. 2346 at 4.

But as the Government notes, Defendant was a leader of the Outlaws. ECF No. 2345 at 6; ECF No. 2170 at 18. The predicate acts for Defendant's conspiracy charge "included, but were not limited to, murder, arson, and causing damage by explosives." ECF No. 2170 at 19. The Outlaws committed acts of violence and intimidation on rival biker gangs and on Outlaws members who were perceived as disloyal. *Id.* In signing his plea agreement, Defendant "ma[de] no objection to the factual basis" for the charges against him. *Id.* at 4. Compounding matters, Defendant fled the United States to avoid facing the legal consequences of his actions. He lived as a fugitive in Mexico for nearly 20 years. ECF No. 2239 at 7.

As the Court held in its order on Defendant's first motion for compassionate release,

> In the case of fugitive defendants, "[t]he need for general deterrence and to promote respect for the law, in particular, weigh strongly against Defendant." *United States v. Hallahan*, [] Nos. 1:99-cr-10045, 1:12-cr-10054, 2020 WL 4193112, at *4 (C.D. Ill. July 21, 2020). To release Defendant at this juncture "would suggest that one who disrespects the law . . . and flee[s] the consequences may avail himself of its softer side to avoid responsibility. That cannot be; the sentence must promote respect for the law." *Id.*

*Id.* at 7–8. Although it has been over two years since the Court denied Defendant compassionate release on this basis, the passage of time has not altered the Court's conclusion. The severity of Defendant's crimes and his almost 20 years as a fugitive overwhelm the analysis in this case. Throughout his time with the Outlaws, Defendant made it known to the Outlaws, rival gang members, and unassuming citizens alike that they best not question his loyalty to the Outlaws. Defendant demonstrated that he was willing and able to do what it took to defend the Outlaws, which

included orchestrating an extensive gang war that was fueled by jealous rivalry and executed with firearms and explosives. ECF No. 2229 at 13. As an Outlaws leader, much of Defendant's work involved directing other members to act, including remotely by walkie-talkie, and ordering other members to report back to him. *Id.* at 13–14, 18 (describing Defendant's "direct[ion]" of murder).

Releasing Defendant even nine months early would neither promote respect for the law nor provide just punishment. Defendant earned almost 20 years of relative freedom compared to his co-defendants while he was a fugitive in Mexico. He was caught and brought back to the United States over a decade after many of his co-defendants' trials, armed with the benefit of hindsight to accept a plea agreement of 15 years' incarceration—an agreement in which both the "government and the Court gave substantial consideration to [Defendant's] claim of serious health issues." *Id.* at 21. Thus, the factor of deterrence also weighs against compassionate release.

While the Court does not doubt that Defendant's time in prison has been more difficult due to his medical conditions, again, it has been over two years since Defendant's first motion for compassionate release and Defendant remains stable. Remaining in prison under these circumstances, and for what Defendant concedes is only nine more months, is not overly punitive. Finally, the Court cannot conclude that Defendant's immobility removes potential danger to the community given his prior work as an Outlaws leader and organizer, which work was at the time (and can still be)

performed remotely. For all these reasons, Defendant's third motion for compassionate release will be denied.[8]

## 4. CONCLUSION

The § 3553(a) factors strongly counsel against compassionate release. Therefore, the Court denies Defendant's third motion for compassionate release.

Accordingly,

**IT IS ORDERED** that the Government's motion to seal, ECF No. 2344, be and the same is hereby **GRANTED**; the Government's response docketed at ECF No. 2345 shall remain under seal until further order of the Court; and

**IT IS FURTHER ORDERED** that Defendant Randy Yager's motion for compassionate release, ECF No. 2342, be and the same is hereby **DENIED**.

Dated at Milwaukee, Wisconsin, this 22nd day of September, 2023.

BY THE COURT:

J. P. Stadtmueller
U.S. District Judge

---

[8] The Court also denies Defendant's request that the Court impose "supervised release with a condition of home confinement for the amount of incarceration he has remaining." ECF No. 2342 at 11. This request is a backdoor request for home confinement, which the Court has explained is the exclusive domain of the BOP. *See supra* note 7. To the extent Defendant wishes to modify his conditions of supervised release, he may work with Probation once he has completed his term of incarceration.